**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

**Dated: January 13, 2022**



John E. Hoffman, Jr.
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| *In re*: | : | Chapter 7 |
| | : | |
| Jose R. Villavicencio, | : | Case No. 19-52861 |
| | : | |
| *Debtor*. | : | Judge Hoffman |

**OPINION AND ORDER ON THE TRUSTEE'S OBJECTIONS
TO THE DEBTOR'S CLAIMED EXEMPTIONS (Docs. 55 & 82)**

### I. Introduction

An individual debtor may exempt certain property from his bankruptcy estate. But to do so the debtor must have an interest in property of the kind described in the applicable exemption statute on the date he files his case. The two exemptions claimed by the debtor, Jose R. Villavicencio ("Villavicencio"), fail this basic test. Invoking Ohio's homestead exemption, Villavicencio seeks to exempt the property where he resided (and still resides) when he filed his bankruptcy petition. But Villavicencio does not have an interest in that property. Rather, that interest is held by a limited liability company he owns and controls. The exemption Villavicencio claims in his self-directed individual retirement account ("SEP IRA") fares no better. Because he engaged in a transaction prohibited by Internal Revenue Code provisions governing IRAs,

Villavicencio's SEP IRA lost its status as a tax-exempt IRA long before he filed his bankruptcy petition. Thus, Villavicencio's SEP IRA —like his residence—is not exemptible under Ohio law.

## II. Jurisdiction and Constitutional Authority

The Court has jurisdiction to hear and determine this matter under 28 U.S.C. § 1334(b) and the general order of reference entered in this district in accordance with 28 U.S.C. § 157(a). The allowance of exemptions from property of the estate is a core proceeding. 28 U.S.C. § 157(b)(2)(B). Because this contested matter "stems from the bankruptcy itself," the Court also has the constitutional authority to enter a final judgment. *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Background

**A.     The Evidentiary Record**

After Myron N. Terlecky, the Chapter 7 trustee ("Trustee"), objected to the exemptions claimed by Villavicencio, the Court held a hearing on his objections and later conducted a follow-up status conference to clarify the record made at the hearing. The evidentiary record includes: (1) Villavicencio's hearing testimony;[1] (2) the Trustee's Exhibits 1 through 13;[2] which were admitted into evidence without objection; and (3) admissions made by Villavicencio. Villavicencio's admissions were made after he failed to respond to the Trustee's request for admissions, the Trustee filed an unopposed Motion to Deem Facts Admitted as Against Debtor (Doc. 68) ("Admissions Motion") and the Court granted the motion (Doc. 80). The Court will refer to each fact admitted as "Admission No. __." Though not evidence, the statements made by counsel at the status conference in response to questions posed by the Court helped clarify the

---

[1]The Court will cite the transcripts of the hearing (Doc. 96) and the status conference (Doc. 98) as "Hr'g Tr." and "Status Conf. Tr.," respectively.
[2]When citing documents in the record, the Court will cite to the PDF page number.

2

record made at the initial hearing. Because there was no disagreement between counsel for the parties as to the substance of the clarifying statements made at the status conference, the Court will treat those statements as stipulations of fact.

**B.     Procedural History and Factual Findings**

On May 1, 2019 ("Petition Date"), Villavicencio filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. As of the Petition Date:

- Villavicencio was the sole member of JRV SEPIRA LLC, an Ohio limited liability company ("LLC"). Admissions Mot. at 14 (Admission No. 2);

- The LLC owned multiple parcels of real property, *id.* at 15 (Admission No. 6); Hr'g Tr. at 26;

- The LLC generated income by renting the properties; Hr'g Tr. at 33–34;

- The LLC was buying one parcel of real property located at 3339 Daglow Road, Columbus, Ohio ("Daglow Property") from an individual named Joseph F. Miccio on a land contract that was recorded with the Franklin County Recorder in November 2017. Admissions Mot. at 14 (Admission No. 3); Hr'g Tr. at 14, 30; and

- Villavicencio resided at the Daglow Property. Admissions Mot. at 14 (Admission No. 1).

Where did the LLC get the funds to buy the properties it owns? To answer that question, some history is in order. Villavicencio worked as an emergency-medicine physician for Premier Medical Services for several years. Hr'g Tr. at 32. One of the employment benefits that Premier offered was an IRA to which Villavicencio contributed. *Id.* When Premier was bought out, on the advice of his financial advisor—Broad Financial—Villavicencio rolled over the funds in the Premier IRA to the SEP IRA. The SEP IRA was administered by Madison Trust Company, the custodian of the account. *Id.* at 32, 37. Villavicencio explained that "[t]here was professional management of the [SEP] IRA at Premier and [he] did not concern [him]self with it. But when

3

[Premier was bought out], [he] wanted to be able to direct his own retirement account." *Id.* at 32–33.

After establishing the SEP IRA, Villavicencio made the decision to use the funds it held to invest in real estate. So back in March 2017 Villavicencio withdrew the $243,537.67 on account at Madison Trust, and transferred some of the withdrawn funds to the LLC. Admissions Mot. at 15 (Admission Nos. 8 and 9); Hr'g Tr. at 17–18. He deposited $199,667.91 of the funds withdrawn from the SEP IRA into a bank account at Fifth Third Bank.[3] Hr'g Tr. at 19. Villavicencio then used those funds to purchase properties in the name of the LLC. *Id.* at 22, 26. As of the Petition Date, there was less than $1,000 in the Fifth Third Bank account, with most of the funds having been used to purchase real estate or make payments on the land contract for the Daglow Property. Admission Motion at 15 (Admission No. 5); Status Conf. Tr. at 19.

Among the schedules of assets and liabilities Villavicencio filed along with his bankruptcy petition was "Schedule C: The Property You Claim as Exempt." Doc. 1 (Bankruptcy Pet. & Schedules) at 18. After making several amendments to this schedule, Docs. 54 and 76, Villavicencio settled on, among others, two exemptions in property described as "Madison Trust (JRV SEPIRA LLC)," which he valued at $240,000.[4] Doc. 76 at 13. First, Villavicencio claimed an exemption of $240,000 under § 2329.66(A)(10)(c) of the Ohio Revised Code, *id*. (Amended Schedule C) at 13, which grants an exemption in a debtor's individual retirement account. Second, he claimed Madison Trust (JRV SEPIRA LLC) exempt under Ohio's homestead exemption,

---

[3] When asked what happened to the difference between the $243,537.67 withdrawn from the SEP IRA and the $199,667.91 deposited into the Fifth Third account, Villavicencio testified that he could not recall. Hr'g Tr. at 19.

[4] At the status conference the parties agreed that the $240,000 value of the LLC stated in the bankruptcy schedules was Villavicencio's estimated value of the real property owned by the LLC on the Petition Date. Status Conf. Tr. at 6, 19.

4

presumably because he resides at one of the properties held by the LLC—the Daglow Property.[5] The homestead exemption afforded by Ohio Revised Code § 2329.66(A)(1)(b) provides that a debtor may exempt his interest, up to the statutory limit of $145,425, in "one parcel or item of real or personal property that the person or a dependent of the person uses as a residence." Ohio Rev. Code § 2329.66(A)(1)(b). Thus, the second exemption Villavicencio claimed for the Madison Trust (JRV SEPIRA LLC) was in the amount of $145,425. Doc. 76 (Amended Schedule C) at 13.

As stated above, the Trustee objected to both exemptions. According to the Trustee, "[p]roperty of the LLC, including the Daglow [Property], is the interest of the LLC" rather than Villavicencio, and he therefore "lacks the requisite interest in the Daglow [Property] to claim" an exemption under Ohio Revised Code § 2329.66(A)(1)(b). Doc. 82 (Trustee's Obj.) at 6. As for the IRA exemption claimed under Ohio Revised Code § 2329.66(A)(10)(c),[6] the Trustee claims that Villavicencio's use of the Daglow Property as his personal residence was a prohibited transaction under the laws governing individual retirement accounts. The Trustee's argument on that score distills to three points:

- "Under IRA guidelines, when an owner of an individual retirement account engages in a prohibited transaction, the account ceases being a retirement account as of the first day of the year of the prohibited transaction."

---

[5] As stated, the LLC is purchasing the Daglow Property from Joseph Miccio on a land contract recorded with the Franklin County Recorder in November 2017.

[6] Villavicencio originally claimed an exemption in the SEP IRA under § 2329.66(A)(10)(b) of the Ohio Revised Code, Doc. 1 at 19, which permits debtors to exempt their right to receive a payment or other benefit under a pension, annuity, or similar plan or contract. Villavicencio filed an amended Schedule C the day before the hearing to claim an exemption under § 2329.66(A)(10)(c), Doc. 76 at 13, which allows debtors to exempt their interests in individual retirement accounts. In the amended Schedule C, Villavicencio also, for the first time, claimed an exemption in the Daglow Property under § 2329.66(A)(1)(b)—the Ohio homestead exemption. *Id*. The parties agreed that the hearing could go forward despite Villavicencio's claiming the exemptions under §§ 2329.66(A)(10)(c) and 2329.66(A)(1)(b) on the eve of the hearing. Hr'g Tr. at 5–8.

5

- "As a result of using the Daglow [Property] as the Debtor's personal residence, the [SEP] IRA ceased being a retirement account as of January 1, 2017."

- Thus, on the Petition Date "[t]here [was] no retirement account to which the claimed exemption may apply."

Doc. 55 (Trustee's Obj.) at 3.

Villavicencio and his counsel conceded during the hearing that, in managing his SEP IRA, he violated Internal Revenue Service regulations that must be obeyed for an IRA to maintain its tax-exempt status. Hr'g Tr. at 10, 34. Although he admitted engaging in "transactions" violative of IRS rules, *id.* at 34, only one such transaction was identified at the hearing. That "transaction" was Villavicencio's residing at the Daglow Property, one of the investment properties held—through the LLC—by the SEP IRA. Despite that violation, Villavicencio asserts that he may still exempt the SEP IRA because Ohio Revised Code § 2329.66(A)(10)(g) provides a safe harbor. Hr'g Tr. at 12. This provision states that interests in retirement plans and the like will be exempt even if they fail to satisfy applicable law if the failure was due to "an error made in good faith." Ohio Rev. Code § 2329.66(A)(10)(g). Given this argument—sprung on opposing counsel and the Court for the first time at the hearing—the Court entered an agreed order (Doc. 77) allowing counsel for the Trustee and Villavicencio the opportunity to brief the newly raised issue.[7]

The Trustee then filed a separate objection to the homestead exemption Villavicencio claimed under Ohio Revised Code § 2329.66(A)(1)(b). Doc. 82 (Trustee's Obj.).[8] He also filed a

---

[7] After entering the agreed order, the Court received the following supplemental briefing: (1) Villavicencio's brief on the applicability of Ohio Revised Code § 2329.66(A)(10)(g) (Doc. 83); (2) Trustee's reply brief (Doc. 86); and (3) Villavicencio's response (Doc. 89).

[8] The Trustee's objection to Villavicencio's claimed homestead exemption prompted these filings: (1) Villavicencio's response (Doc. 87); (2) Trustee's reply (Doc. 88); and (3) Trustee's supplement to his objection (Doc. 92).

motion (Doc. 84), which was not opposed by Villavicencio, requesting that the Court take judicial notice in accordance with Rule 201 of the Federal Rules of Evidence of the record of two adversary proceedings: Adv. Pro. No 19-2097, *Coward v. Villavicencio* ("Coward Adversary Proceeding") and Adv. Pro. No. 19-2140, *McDermont v. Villavicencio* ("McDermott Adversary Proceeding").

### IV.  Legal Analysis

**A.  Exemptions: Purpose, Scope and the Burden of Proof**

The filing of a petition for relief under the Bankruptcy Code creates a bankruptcy estate that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This "property of the estate" may be sold by the trustee after notice and a hearing. 11 U.S.C. § 363(b)(1). To keep a trustee from selling property of the estate, a debtor may claim the property as "exempt."

As one commentator has explained:

> Exemption legislation embodies a deliberate choice of policy to prefer the social interest in providing a minimum of economic security and other benefits to debtors and their families over the economic interest to be served by assuring creditors the maximum availability of their debtor's property for the satisfaction of their claims.

Frank R. Kennedy, *Limitation of Exemptions in Bankruptcy*, 45 Iowa L. Rev. 445, 447–48 (1960). Exemptions "give . . . [] debtors a so-called 'grub-stake' to begin their fresh start and . . . act as a safety net, so that the debtor and his family are not completely impoverished due to creditor collection action or bankruptcy such that they become wards of the state." *In re Robinson*, 292 B.R. 599, 606 (Bankr. S.D. Ohio 2003) (internal quotation marks omitted); *see also Rousey v. Jacoway*, 544 U.S. 320, 325 (2005) ("To help the debtor obtain a fresh start, the Bankruptcy Code

permits him to withdraw from the estate certain interests in property, such as his car or home, up to certain values." (citations omitted)).

"Individual debtors may exempt from property of the estate either: (1) the property exempt under applicable state law and federal nonbankruptcy law; or (2) the property identified in § 522(d) of the Bankruptcy Code, unless applicable state law specifically does not authorize debtors to use the § 522(d) exemptions." *In re Weatherspoon*, 605 B.R. 472, 482 (Bankr. S.D. Ohio 2019) (citing 11 U.S.C. § 522(b)(1)–(3)). As a resident of Ohio, Villavicencio may, for the most part, claim only the exemptions available under Ohio law.[9] Ohio Rev. Code. § 2329.662 (stating that "[Ohio] specifically does not authorize debtors who are domiciled in this state to exempt the property specified in the [the Bankruptcy Code]").

"There is a *prima facie* presumption that an exemption claimed by a debtor is proper." *In re Bellisari*, 554 B.R. 440, 443 (Bankr. S.D. Ohio 2016). Parties in interest, such as the Trustee, may object to a claimed exemption. The objector bears the burden of proving, by a preponderance of evidence, that the debtor is not entitled to the exemption. *Id*. at 443–44. If the objecting party introduces evidence sufficient to rebut the prima facie validity of the exemption, then the burden shifts to the debtor to show that the exemption is proper. *Id*. at 444. As to both exemptions at issue, the Trustee has met his initial burden and Villavicencio has failed to show that the exemptions are proper.

---

[9]Ohio residents may also claim the exemptions under federal law that are set forth in § 522(b)(3)(B) and (C). *See In re Bauman*, No. 11 B 32418, 2014 WL 816407, at *12 n.12 (Bankr. N.D. Ill. Mar. 4, 2014) ("Courts sometimes say that because of the 'opt out,' a[] debtor can claim only the . . . state law exemptions. Not quite. In addition to the exemptions permitted under state law, a debtor in an 'opt out' state can claim the other exemptions in section 522(b)(3). When that debtor's property includes an interest in retirement funds, he can claim any applicable state law exemption and also the retirement fund exemption in section 522(b)(3)(C)."). Villavicencio has not claimed the retirement fund exemption under federal law.

**B.     Ohio Revised Code § 2329.66(A)(1)(b): The Homestead Exemption**

The LLC is buying the Daglow Property where Villavicencio resides through its land contract with Miccio. Villavicencio claims an exemption under Ohio Revised Code § 2329.66(A)(1)(b), which permits debtors to exempt a portion of their interest in real property they use as a residence. Ohio's homestead exemption permits a person to exempt "*the person's interest*, not to exceed one hundred [forty-five thousand four hundred twenty-five] dollars, in one parcel or item of real or personal property that the person or dependent of the person uses as a residence." Ohio Rev. Code § 2329.66(A)(1)(b) (emphasis added).[10] Villavicencio, however, does not have an interest in the Daglow Property. Instead, it is the LLC that holds an interest in the Daglow Property through its land contract with Miccio.

The Bankruptcy Appellate Panel for the Sixth Circuit has held that the homestead exemption is unavailable under these circumstances. *In re Breece*, No. 12-8018, 2013 WL 197399, at *9 (B.A.P. 6th Cir. Jan. 18, 2013). In *Breece*, the BAP ruled that a debtor could not claim the homestead exemption in real property owned by the debtor's limited liability company because the debtor did not have an interest in the real property. *Id*. This was because, under Ohio law, a

---

[10]Ohio law provides for adjustment of the amount of the homestead exemption:

> (B) On April 1, 2010, and on the first day of April in each third calendar year after 2010, the Ohio judicial conference shall adjust each dollar amount set forth in this section to reflect any increase in the consumer price index for all urban consumers, as published by the United States department of labor, or, if that index is no longer published, a generally available comparable index, for the three-year period ending on the thirty-first day of December of the preceding year.

Ohio Rev. Code § 2329.66(B). The adjusted dollar amounts may be examined at http://www.ohiojudges.org by going to the "Resources" tab, selecting "Publications" and then viewing "Exemptions." The amount of the homestead exemption available to Villavicencio as of the Petition Date was $145,425.

9

"membership interest in a limited liability company. . . does not confer upon the member any specific interest in company property, whether personal property or real property. Such property is, instead, held and [owned] solely by the company." *Id*. at *3 (internal quotation marks omitted). Other courts have come to the same conclusion: A debtor is not entitled to a homestead exemption in real property owned by a limited liability company in which he holds a membership interest. Why? Because, as the *Breece* court held, a debtor's interest in a limited liability company does not create an exemptible interest in the company's property. *See Schaefers v. Blizzard Energy, Inc. (In re Schaefers)*, No. 9:19-BK-11163-MB, 2020 WL 7043564, at *4–5 (B.A.P. 9th Cir. Dec. 1, 2020) (holding that the debtor could not claim a homestead exemption in real property owned by the debtor's limited liability company); *In re Hess*, 618 B.R. 13, 15 (Bankr. D.N.M. 2020) (same); *In re Stewart*, No. 09-37257, 2010 Bankr. LEXIS 6517, at *11–12 (Bankr. N.D. Ohio Oct. 1, 2010) (same). So too here: Villavicencio's interest in the LLC did not give him an exemptible interest in the Daglow Property.

Against all this authority Villavicencio pits *In re Starr*, 485 B.R. 835 (Bankr. N.D. Ohio 2012), arguing that the reasoning of that decision means that the "Debtor should receive the benefit of the exemption pursuant to his beneficia[l] interest" in the Daglow Property. Doc. 87 at 3. But *Starr* doesn't move the needle. That case involved real property held in a trust. And the debtor was both the trustee and one of the beneficiaries of the trust. So when the debtor filed her bankruptcy case, "her beneficial and legal interests in the Trust became property of the bankruptcy estate," and "[a]s trustee, she held legal title to the real estate comprising part of the trust corpus[.]" *Starr*, 485 B.R. at 840. Villavicencio, by contrast, holds no beneficial interest or any other interest in the Daglow Property, which is owned by the LLC (or, more accurately, is being bought by the LLC). Thus, *Starr* is not on point. In the end, Villavicencio's claim of a homestead exemption

under Ohio Revised Code § 2329.66(A)(1)(b) must fail because he held no interest in the Daglow Property on the Petition Date. That interest was held by the LLC.

C.     **Ohio Revised Code § 2329.66(A)(10)(c): The IRA Exemption**

Villavicencio's second exemption claim also falls short. Section 2329.66(A)(10)(c) of the Ohio Revised Code provides for an exemption in, among other things, a "person's rights or interests in the assets held in, or to directly or indirectly receive any payment or benefit under, any individual retirement account. . . ." Ohio Rev. Code § 2329.66(A)(10)(c). An individual retirement account "exists only because of the [Internal Revenue] Code." *In re Roberts*, 326 B.R. 424, 427 (Bankr. S.D. Ohio 2004). And it is "the [Internal Revenue] Code [that] . . . determine[s] whether or not an investment vehicle is an IRA in the first place or whether or not that investment vehicle has lost its status as an IRA." *Id.*

Individual retirement accounts are governed by section 408 of the Internal Revenue Code. Here, the parties agree that the SEP IRA satisfied the requirements of section 408 and was thus a tax-exempt individual retirement account when it was formed. But if the "individual for whose benefit [the] individual retirement account is established . . . engages in any transaction prohibited by section 4975 with respect to such account [,]" the account loses its tax-exempt status as an IRA. 26 U.S.C. § 408(e)(2)(A). Section 4975 defines "prohibited transaction" to mean, among other things, the "transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan." 26 U.S.C. § 4975(c)(1)(D). A "disqualified person" includes a "fiduciary," 26 U.S.C. § 4975(e)(2)(A), and a "fiduciary" is defined as "any person who exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]" 26 U.S.C. § 4975(e)(3)(A).

11

Because Villavicencio had authority and control over the management and disposition of the assets of the SEP IRA, Hr'g Tr. at 18, he is a fiduciary and thus a disqualified person.

Villavicencio's use of the Daglow Property as his personal residence constituted a "prohibited transaction" under the Internal Revenue Code because it was the "use by . . . a disqualified person of the income or assets of a plan" under 26 U.S.C. § 4975(c)(1)(D). *In re Yerian v. Webber (In re Yerian)*, No. 6:17-cv-459-Orl-37, 2018 WL 8758736, at *4 (M.D. Fla. Feb. 9, 2018) ("[T]he IRA is not exempt at step one. As the Bankruptcy Court found—and Debtor does not contest—the IRA was not maintained in accordance with IRC § 408. This was because Debtor used IRA assets to engage in prohibited transactions, specifically to purchase two vehicles titled in his and [his wife's] individual names and property in Puerto Rico where Debtor stayed for non-IRA purposes.") *aff'd*, 927 F.3d 1223 (11th Cir. 2019). Thus, under section 408(e)(2)(A), the SEP IRA lost its tax-exempt status as an individual retirement account no later than the first day of the taxable year that Villavicencio lived at the Daglow Property, which was well before the Petition Date. Indeed, Villavicencio does not dispute that section 408(e)(2)(A) of the Internal Revenue Code applies, and he admits that he engaged in a transaction prohibited by section 4975. Hr'g Tr. at 34. Because he did so, the SEP IRA was not a tax-exempt individual retirement account on the Petition Date. And having lost its tax-exempt status under the Internal Revenue Code, the SEP IRA likewise loses its exempt status under Ohio Rev. Code § 2329.66(A)(10)(c). *In re Meredith*, 2005 Bankr. LEXIS 2798, at *20 (Bankr. E.D. Va. May 19, 2005) (holding that, because the debtor engaged in a prohibited transaction under section 4975 of the Internal Revenue Code, his individual retirement account lost its tax-exempt status under section 408(e)(2), meaning that the debtor could not exempt the account under the state law exemption for individual retirement accounts).

Though Villavicencio admits that he engaged in a prohibited transaction, he argues that Ohio Revised Code § 2329.66(A)(10)(g) saves the day. That provision states that

> [a] person's interest in any plan, program, instrument, or device described in divisions (A)(10)(a) to (e) of this section shall be considered an exempt interest even if the plan, program, instrument, or device in question, due to an error made in good faith, failed to satisfy any criteria applicable to that plan, program, instrument, or device under the "Internal Revenue Code of 1986[.]"

Ohio Rev. Code § 2329.66(A)(10)(g).

There are no decisions interpreting Ohio Revised Code § 2329.66(A)(10)(g). But a similar statute was construed by the bankruptcy court in *In re Bauman*, No. 11 B 32418, 2014 WL 816407 (Bankr. N.D. Ill. Mar. 4, 2014). There, the debtor claimed his interest in the Bauman Venture Corporation Pension Plan and Trust ("Bauman Venture Plan") was exempt under Illinois law. The Illinois exemption statute stated that a debtor may exempt his interest in a retirement plan "if the plan . . . is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code[.]" 735 Ill. Comp. Stat. Ann. 5/12-1006(a) (West 2021). The debtor was the sole participant in the Bauman Venture Plan, and his wholly-owned corporation, Bauman Venture Corp., was the plan sponsor. Contributions made to the Bauman Venture Plan and distributions made to the debtor both "failed to comply with the [Internal Revenue Code] and disqualified the [Bauman Venture] Plan from favorable tax treatment." *Id*. at *17. The debtor argued that he still was entitled to exempt his interest in the Bauman Venture Plan because he intended it in good faith to qualify as a retirement plan.

Unpersuaded, the *Bauman* court rejected the debtor's argument. It began by noting that "good faith under section 12-1006 is necessarily a fact-specific determination to be made on a case-by-case basis." *Id.* at *15. The court then pointed out that

> [t]he context here alters the "good faith" analysis. A large corporate employer with hundreds of employees establishes and maintains the plan itself; the employer is in charge. An individual employee does little more than agree to participate in the plan, render services to the employer, and then accept the benefits when he retires. When the employee later tries to shield his retirement funds from creditors under section 12–1006 and it turns out the plan lost its qualification under the [Internal Revenue Code] because of some operational defect, the participant can still claim the exemption because he relied on his employer. . . .
>
> The Bauman Venture Plan is not the pension plan of a large corporate employer, and Bauman is not one of hundreds of employees who signed a form agreeing to participate in the plan. Bauman is the sole owner and operator of the plan sponsor, Bauman Venture, as well as the trustee of the plan's trust. The Bauman Venture Plan came about only because Bauman himself caused it to be created. Bauman is in charge, entrusted with the Plan's assets. Because this case is not the ordinary one involving an employee of a large business, the "good faith" analysis changes accordingly. For someone like Bauman to satisfy the "good faith" requirement of section 12–1006, substantially more can be expected.

*Id.* at *16.

According to the *Bauman* court, the debtor operated the Bauman Venture Plan in the way he did "not from any wrongful intent, but because he knew no better." *Id*. at *18. The problem, the court said, was that the debtor "knew no better because he never tried to know better," and "[i]nattention will not do. When a debtor is not only a pension plan participant but also the owner of the plan sponsor and the trustee of the trust, he must *try* to become familiar with the [Internal Revenue Code's] requirements and *try* to comply with them." *Id.* The court found that remaining "blissfully ignorant . . . with complete indifference" to the governing law could not constitute good faith. *Id.*

The *Bauman* court's reasoning is persuasive. Savings statutes like Ohio Revised Code § 2329.66(A)(10)(g) (and the Illinois statute at issue in Bauman) do not provide a "get-out-of-jail-free card" to debtors who disregard IRS plan-qualification requirements. Like the debtor in

*Bauman*, Villavicencio had authority and complete control over the management and disposition of the assets of the SEP IRA. As the *Bauman* court put it, he was "in charge." *Id.* But, just as in *Bauman*, Villavicencio paid no heed to IRS requirements governing tax-exempt status—here, to those applicable to individual retirement accounts. Villavicencio presented no evidence to show that he "*tr[ied]* to become familiar with the [applicable Internal Revenue Code] requirements and *tr[ied]* to comply with them." *Bauman*, 2014 WL 816407, at *18. Rather, like the debtor in Bauman, Villavicencio remained "blissfully ignorant . . . [and acted] with complete indifference" to the governing law. *Id.* Thus, by residing in the Daglow Property, Villavicencio did not commit "an error made in good faith" under Ohio Revised Code § 2329.66(A)(10)(g).

Having concluded that Ohio Revised Code § 2329.66(A)(10)(g)'s good-faith savings provision does not affect the exemptibility of the SEP IRA, the Court need not weigh the evidence the Trustee offers to establish bad faith on Villavicencio's part. According to the Trustee, that evidence is found in the documents he asks the Court to take judicial notice of—that is, the documents filed in the Coward Adversary Proceeding and the McDermont Adversary Proceeding. Because the Trustee's request was unopposed, the Court takes judicial notice of those documents, which, the Trustee submits, are "vital [to understanding] the full scope of [Villavicencio's] conduct[.]" Doc. 84 at 3.

In the Coward Adversary Proceeding, the plaintiff sought a determination that a judgment entered against Villavicencio by the Franklin County Common Pleas Court in the amount of $1,900,000 in punitive damages is nondischargeable as a debt for willful and malicious injury under § 523(a)(6) of the Bankruptcy Code. The pleadings filed in the Coward Adversary Proceeding alleged that:

- Villavicencio had been a physician before losing his license;

15

- The plaintiffs in the Coward Adversary Proceeding are representatives of the estate of an individual ("Decedent") who had been a patient of Villavicencio; and

- Villavicencio "[t]hrough the improper prescribing of lethal doses of narcotics and failure to monitor Decedent's medications to avoid a lethal intoxication of various prescribed medications . . . caused the death of Decedent through reckless actions and willful misconduct."

Coward Adversary Proceeding, Adv. Pro. 19-2097, Doc. 2 (Amended Complaint) at 3–4. And in the McDermont Adversary Proceeding, the United States Trustee sought a global denial of Villavicencio's discharge, alleging, among other things, that he failed to disclose assets in his bankruptcy schedules and made false oaths. Adv. Pro. 19-2140, Doc. 1 (Complaint) at 4–7. In both adversary proceedings, the parties entered into a stipulation and agreed order waiving and denying Villavicencio's discharge under § 727(a)(10) of the Bankruptcy Code. Adv. Pro. 19-2097, Doc. 20; Adv. Pro. 19-2140, Doc. 12.

All of this shows that Villavicencio is guilty of serious misconduct. None of it, however, establishes that Villavicencio engaged in the transaction prohibited by the Internal Revenue Code—living at the Daglow Property—in bad faith or to defraud creditors. In fact, if Villavicencio had not withdrawn cash from his SEP IRA at Madison Trust, then his funds would have remained exempt. And as already discussed, it seems that Villavicencio's decision to live at the Daglow Property did not stem from some nefarious scheme, but instead from his failure to become familiar with the IRS rules governing individual retirement accounts. Still, in the words of the *Bauman* court, "inattention will not do" when a debtor seeks the protections afforded by a good-faith savings clause in a state exemption statute. *Bauman*, 2014 WL 816407, at *18. The Court therefore need not determine that Villavicencio's "prohibited transaction" (residing in the Daglow Property) was undertaken to defraud creditors or otherwise constituted bad-faith misconduct. It suffices to say that Villavicencio acted with complete indifference to the IRS rules governing the

16

tax-exempt status of IRAs when he chose to live at the Daglow Property. Thus, by engaging in a transaction prohibited by section 4975 of the Internal Revenue Code, Villavicencio did not commit an error made in good faith under Ohio Revised Code § 2329.66(A)(10)(g).

This result squares with the view that Ohio Revised Code § 2329.66(A)(10)(g) is a "savings clause" designed to "protect debtors from technical errors made by plan draftsmen or administrators." D. Bowen Loeffler & John E. Sullivan, III, *Ohio's Quiet Revolution: The Ohio Asset Management Modernization Act of 2012*, 23 No. 3 Ohio Prob. L.J. NL 2 (Jan./Feb. 2013). The statute was not designed to bless prohibited transactions by participants in self-directed individual retirement accounts. This result also aligns the Ohio exemption statute with federal law governing individual retirement accounts. *See Ellis v. Comm'r*, 787 F.3d 1213, 1216 (8th Cir. 2015) ("Prohibited transactions include any 'direct or indirect . . . transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;' or 'act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account.' . . . Such transactions are prohibited even if they are made in good faith or are beneficial to the plan.") (quoting 26 U.S.C. § 4975(c)(1)(D), (E)). And, what's more, this result mirrors the view expressed by the Sixth Circuit in other contexts that good faith requires some effort to comply with governing law. *See, e.g.*, *United States v. Hendrickson*, 822 F.3d 812, 821 (6th Cir. 2016) ("[T]he good-faith defense to criminal contempt applies only where the defendant has made 'a good faith effort *to comply* with [the] court order.'") (quoting *United States v. Simmons*, 215 F.3d 737, 741 (7th Cir. 2000); *Thom v. Am. Standard, Inc.*, 666 F.3d 968, 977 (6th Cir. 2012) ("To establish good faith under the FMLA, a defendant must show that 'it honestly intended to ascertain the dictates of the FMLA and to act in conformance with it.'") (quoting *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 868 (8th Cir. 2006)).

## V. Conclusion

For all these reasons, the Trustee's objections are **SUSTAINED**, and Villavicencio's exemptions claimed under both Ohio Revised Code §§ 2329.66(A)(1)(b) and 2329.66(A)(10)(c) are **DISALLOWED**.

**IT IS SO ORDERED**.

Copies to:

Herbert N. Strayer, Jr., Attorney for the Debtor (electronically)
Myron N. Terlecky, Chapter 7 Trustee (electronically)