UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 19-52861 |
| | : | |
| Jose R. Villavicencio, | : | Chapter 7 |
| | : | |
| Debtor. | : | Judge Hoffman |

**MOTION OF CHAPTER 7 TRUSTEE FOR AUTHORITY TO SELL REAL ESTATE LOCATED AT (1) 5465 HANSEL AVENUE, UNIT H-11 OF CAMELOT BY THE LAKE, ORLANDO, FLORIDA, AND (2) 5449 HANSEL AVENUE, UNIT M-17, OF CAMELOT BY THE LAKE, ORLANDO, FLORIDA, FREE AND CLEAR OF ALL CLAIMED LIENS, INTERESTS OR ENCUMBRANCES**

Myron N. Terlecky, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Jose R. Villavicencio, hereby moves this Court pursuant to 11 U.S.C. §363(b)(1) and (f)(1)(3) and (5) and (h) and (j), Rule 6004(c) of the Rules of Bankruptcy Procedure and Local Bankruptcy Rule 6004-1 for an Order authorizing him to sell certain real estate located at (1) 5465 Hansel Avenue Unit H-11, of Camelot by The Lake, Orlando, Florida and located at (2) 5449 Hansel Avenue Unit M-17, of Camelot by The Lake, Orlando, Florida, free and clear of all claimed liens, claims or encumbrances on the terms set forth herein.  A Memorandum in Support follows.

Respectfully submitted,

  /s/ Myron N. Terlecky
Myron N. Terlecky (0018628)
John W. Kennedy (0042672)
Strip, Hoppers, Leithart, McGrath & Terlecky Co., LPA
575 South Third Street
Columbus, OH  43215
T: (614) 228-6345  F: (614) 228-6369
Email: mnt@columbuslawyer.net
          jwk@columbuslawyer.net
Attorneys for Chapter 7 Trustee

## MEMORANDUM IN SUPPORT

**A.     BACKGROUND**

1.     Jose R. Villavicencio (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on May 1, 2019 (the "Petition Date").

2.     Myron N. Terlecky is the duly appointed Chapter 7 Trustee herein.

3.     The Debtor has an interest in the following real estate that is property of the bankruptcy estate:

a.     The real estate located at 5465 Hansel Avenue Unit H-11, of Camelot by The Lake, Orlando, Florida, which is a two-bedroom condominium, that the Debtor valued at $50,000 (See, Schedules, Doc. 1)  (the "5465 Hansel Real Estate").  A copy of the legal description of the 5465 Hansel Real Estate is attached hereto as Exhibit A; and,

b.     The real estate located at 5449 Hansel Avenue Unit M-17, of Camelot by The Lake, Orlando, Florida, which is a one-bedroom condominium, that the Debtor valued at $90,000 See, Schedules, Doc. 1)  (the "5449 Hansel Real Estate"; collectively, with the 5465 Hansel Real Estate, the "Real Estate")).  A copy of the legal description of the 5449 Hansel Real Estate is attached hereto as Exhibit B.

4.     The Trustee employed Christine Bowen of RE/MAX Town & County Realty (the "Realtor") to list the Real Estate for sale.  See, *Order Granting  Application to Employ Christine Bowen of RE/MAX Town & County Realty as Realtor (Doc. 141)*, entered on May 1, 2024 (Doc. 144).

5.     Other than real estate taxes and unpaid condominium association fees, the only other party claiming a lien against the Real Estate is Verna R. Coward and Verna R. Coward, Administrator of the Estate of Frederick N. Coward (See, Claim 9 on the Claims register in this

2

case) (the "Coward Claim"). The Trustee has reached an agreement, subject to the approval of this Court pursuant to Rule 9019 of the Rules of Bankruptcy Procedure, for an equal division of the net proceeds from the sale of the Real Estate with the Coward Claim (the "Coward Compromise"). A motion to approve the Coward Compromise will be filed contemporaneously with, or near, the filing of this motion.

5      The Realtor has received offers to purchase the Real Estate, the condition of which can best be described as challenging. There are squatters occupying the Real Estate. The Truste has located counsel in Florida to evict the squatters. However, the prospective purchasers of the Real Estate have agreed to purchase the Real Estate in its current condition.

6.      The highest and best offer to purchase the 5465 Hansel Real Estate is from Graziella Hediger and Andreas Hediger for the sum of $129,000.00. A copy of the purchase contract to purchase the 5465 Hansel Real Estate (the "Contract") is attached hereto as Exhibit C.

7.      The highest and best offer to purchase the 5449 Hansel Real Estate is from Graziella Hediger and Andreas Hediger for the sum of $106,000.00. A copy of the purchase contract to purchase the 5449 Hansel Real Estate (the "Contract") is attached hereto as Exhibit D.

8.      The Trustee believes it is in the best interest of the bankruptcy estate to sell the 5465 Hansel Real Estate to Graziella Hediger and Andreas Hediger for the sum of $129,000.00 and to sell the 5449 Hansel Real Estate to Graziella Hediger and Andreas Hediger for the sum of $106,000.00. The Trustee believes that the sale of the Real Estate is for a reasonable price given their condition. The Trustee has exercised his business judgment and determined that the sale price for the 5465 Hansel Real Estate and for the 5449 Hansel Real Estate, for which approval is sought, is in the best interest of the bankruptcy estate.

9.      The Trustee seeks authorization, subject to further Order of this Court, to distribute the proceeds of sale in order of priority, and to hold the proceeds attributable to the Coward Claim pending approval of agreement reached.

**B.      LAW AND ARGUMENT**

The Trustee is authorized to sell property of the estate, other than in the ordinary course of business, pursuant to 11 U.S.C. §363(b)(1).  Property, under certain circumstances, may be sold free and clear of any interest in the property other than an interest of the estate.   11 U.S.C. §363(f)(3). Bankruptcy Code §363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
> (1)      applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)      such entity consents;
> (3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)      such interest is in bona fide dispute; or
> (5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f)(1) allows the Trustee to sell property free and clear of any interest if nonbankruptcy law permits such a sale.  11 U.S.C. §363(f)(2) allows the Trustee to sell property free and clear of any interest if such entity consents.  11 U.S.C. §363(f)(3) allows the Trustee to sell property of the estate if the interest of an entity is a lien and the lien is to be paid.

In this case, unpaid real estate taxes and unpaid condominium association fees will be paid in full from the sale of 5465 Hansel Real Estate and from the sale of 5449 Hansel Real Estate. Applicable nonbankruptcy law, in this case a Florida state court foreclosure proceeding, would permit the sale of the Real Estate free and clear of the Coward Claim.  Subject to approval of the Court, the Coward Compromise satisfies the provision of 11 U.S.C. §363(f)(2).

4

From the proceeds of sale, the following will be paid:  (1)  customary closing costs, including realtor's commission, subject to Court approval in accordance with 11 U.S.C. 330; (2) the unpaid real estate taxes due the Orange County Tax Collector and unpaid condominium association fees; (3) half (1/2) of the net proceeds will be paid to the Coward Claim, subject to approval of the Coward Compromise; and, (4)  one-half (1/2) of the proceeds payable to the Trustee.  In the event the Coward Compromise is not approved, the proceeds will be held pending further order of this Court.

For the reasons set forth above, the Trustee submits that the proposed sale price is appropriate, and it is in the best interest of the bankruptcy estate.  By proceeding in this fashion, the creditors will receive a distribution, albeit minimal, but it more than they would have received otherwise.

### C.      CONCLUSION

Based upon the foregoing, the Trustee respectfully requests that the Court issue an Order granting the following relief:

1.      That the Trustee be authorized pursuant to 11 U.S.C. §363(b)(1) and (f)(1)(2) and (3),  to sell, subject to better and higher offer, the 5465 Hansel Real Estate to Graziella Hediger and Andreas Hediger for the sum of $129,000.00, free and clear of any and all claimed liens, interests or encumbrances; and

2.      That the Trustee be authorized pursuant to 11 U.S.C. §363(b)(1) and (f)(1)(2) and (3),  to sell, subject to better and higher offer, the 5449 Hansel Real Estate to Graziella Hediger and Andreas Hediger for the sum of $106,000.00, free and clear of any and all claimed liens, interests or encumbrances; and

3.      That the Trustee be authorized to pay the expenses of sale from the proceeds of sale, with any professional fees subject to further Order of the Court; and

4.      That the Trustee be authorized to distribute one-half (1/2) of the net proceeds to the Coward Claim, subject to further order of the Court; or in the alternative, to hold the proceeds attributable to the Coward Claim, subject to further order of the Court; and

5.      That the Court grant such other and further relief as is appropriate

Respectfully submitted,

  /s/ Myron N. Terlecky
Myron N. Terlecky (0018628)
John W. Kennedy (0042672)
Strip, Hoppers, Leithart, McGrath & Terlecky Co., LPA
575 South Third Street
Columbus, OH  43215
T: (614) 228-6345  F: (614) 228-6369
Email:  mnt@columbuslawyer.net
        jwk@columbuslawyer.net
Attorneys for Chapter 7 Trustee

# EXHIBIT A

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021) w-Fl Mod

## EXHIBIT "A"

The Land referred to herein below is situated in the County of Orange, State of Florida, and is described as follows:

Condominium Unit No. 11 of Building H of CAMELOT-BY-THE-LAKE, A CONDOMINIUM, according to the Declaration of Condominium thereof, and exhibits thereto, recorded The 17th Day of September, 1980 in Official Records Book 3139, Pages 222 through 284 of the Public Records of Orange County, Florida, and amendments thereof in Official Records Book 3782, Page 1283, together with all appurtenances thereto, including an undivided interest in the common elements of said Condominium as set forth in the Declaration Thereof.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance (7-1-21) w-FL Mod

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



# EXHIBIT B

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021) w-Fl Mod

The Land referred to herein below is situated in the County of Orange, State of Florida, and is described as follows:

Condominium Unit No. 17 of Building M, of CAMELOT-BY-THE LAKE, a Condominium, according to the Declaration of Condominium thereof, and exhibits thereto, recorded the 17th day of September, 1980 in Official Records Book 3139, Pages 222 through 284, of the Public Records of Orange County, Florida, and amendments thereof in Official Records Book 3782, Page 1293, together with all appurtenances thereto, including an undivided interest in the common elements of said condominium as set forth in the Declaration thereof.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance (7-1-21) w-FL Mod

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



# EXHIBIT C

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/...-8431-...
Authentisign ID: ...-...-...-...-...-...

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/6069237c-1a80-4c6b-b6e7-8824c4375c1

CREEGAN
— GROUP —

## "AS IS" Residential Contract For Sale And Purchase

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

1* PARTIES: _____ Unit 7 Trustee for Jose Raul Villavicencio (Apt 19-5286) ___ ("Seller"),
2* and _____ Graziella G. Hediger & Andreas Hediger _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):

6  1. **PROPERTY DESCRIPTION:**
7*   (a) Street address, city, zip: _____ 5465 Hansel AVENUE #1, Orlando, FL 32809 _____
8*   (b) Located in: _____ Orange _____ County, Florida. Property Tax ID #: _____ 292313113908110 _____
9*   (c) Real Property: The legal description is CAMELOT BY THE LAKE CONDO CB 5/92 UNIT 11 BLDG H
10  _____
11  _____
12    together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13    attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14    by other terms of this Contract.
15   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16    which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17    purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18    and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s),
19    doorbell(s), television wall mount(s) and television mounting hardware, security gate and other access
20    devices, mailbox keys, and storm shutters/storm protection items and hardware ("Personal Property").
21*   Other Personal Property items included in this purchase are: _____
22    _____
23    Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24*   (e) The following items are excluded from the purchase: _____
25    _____

26* ### PURCHASE PRICE AND CLOSING

27* 2. **PURCHASE PRICE (U.S. currency):** ............................................................................. $ _____ 129,000.00 _____

28*   (a) Initial deposit to be held in escrow in the amount of (checks subject to Collection) ....... $ _____ 12,900.00 _____
29    The initial deposit made payable and delivered to "Escrow Agent" named below
30*   (CHECK ONE): (i) ☐ accompanies offer or (ii) ☒ is to be made within _____ (if left
31    blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
32    OPTION (ii) SHALL BE DEEMED SELECTED.
33*   Escrow Agent Name: _____ LEADING EDGE TITLE _____
34*   Address: 1315 Tuscawilla rd, STE 101 Winter Springs, FL 32708 Phone: _ 407-699-7773 _
35*   E-mail: _____ Angie@Letcf.com _____ Fax: _____
36*   (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
37*   days after Effective Date _____ $ _____
38    (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39*   (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ......... _____
40*   (d) Other: _____ $ _____
41   (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42*   transfer or other Collected funds (see STANDARD S) ............................................. $ _____ 116,100.00 _____

43  3. **TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44   (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*   _____ July 12, 2024 _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46    Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47    the counter-offer is delivered.
48   (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49    initialed and delivered this offer or final counter-offer ("Effective Date").

50  4. **CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51    received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52    furnished by each party pursuant to this Contract are delivered ("Closing"). Unless modified by other provisions of

Buyer's Initials _GGH_ _AH_       Page 1 of 13       Seller's Initials _NS_

FloridaRealtors/FloridaBar-ASIS-6x    Rev.7/23 © 2023 Florida Realtors¹ and The Florida Bar. All rights reserved.
Serial#: 075941-000171-9970590

Form
Simplicity

RealtyBackOffice document certificate: https://buy.realtybackoffice.com/download_certificate/86c0207e-1b30-4c6b-bf27-892fed437821
Authentisign ID: 0F6CC5E4-0A3E-EF11-860A-0904BDCF834A

RealtyBackOffice document certificate: https://buy.realtybackoffice.com/download_certificate/86c0207e-1b30-4c6b-bf27-892fed437821

August 15, 2024    *GH*   *AH*   [MT]

53*    this Contract, the Closing shall occur on _____ July 31, 2024 _____ ("Closing Date"), at the time
54    established by the Closing Agent.

55    **5. EXTENSION OF CLOSING DATE:**
56      (a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial
57       Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is
58       checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be
59       extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7
60       days.
61      (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
62       unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
63       extended as provided in STANDARD G.

64    **6. OCCUPANCY AND POSSESSION:**
65      (a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property
66       to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
67       personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
68*       codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss
69       to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and
70       shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-
71       CLOSING OCCUPANCY BY BUYER.
72*      (b) [X] CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING. If Property is
73       subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after
74       Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof
75       shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all
76       within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of
77*       occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such
78*       election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the
79       Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s)
80       and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall not
81       be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after
82       Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.

83*    **7. ASSIGNABILITY: (CHECK ONE):** Buyer [ ] may assign and thereby be released from any further liability under
84*    this Contract; [ ] may assign but not be released from liability under this Contract; or [X] may not assign this Contract.
85    IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.

86                                         **FINANCING**

87    **8. FINANCING:**
88*      [X] (a) This is a cash transaction with no financing contingency.

89*      [ ] (b) This Contract is contingent upon, within _____ (if left blank, then 30) days after Effective Date ("Loan
90*      Approval Period"): (1) Buyer obtaining approval of a [ ] conventional [ ] FHA [ ] VA or [ ] other _____
91*      (describe) mortgage loan for purchase of the Property for a (CHECK ONE): [ ] fixed, [ ] adjustable, [ ] fixed or
92      adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left
93      blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30)
94      years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation
95      of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required
96      for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").

97*       (i) Buyer shall make application for Financing within _____ (if left blank, then 5) days after Effective Date
98      and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of
99      Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this
100      Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval
101      unless Rider V is attached.
102      Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall
103      be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes,
104      but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender
105      and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.
106       (ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's
107      mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions
108      of Loan Approval. Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status

Buyer's Initials *GGH* *AH*       Page 2 of 13       Seller's Initials *NS* _____

FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors¹ and The Florida Bar. All rights reserved.

Serial#: 075841-000171-9970590

Form Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/...8431-4...
Authentisign ID: 0F6CC3E4-DA9E-EF11-86D4-6045BDEFB64A

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/6069237c-1a80-4e8b-b8c7-2824ed137521

109 and progress and release preliminary and finally executed closing disclosures and settlement statements, as
110 appropriate and allowed, to Seller and Broker.
111 (iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing
112 prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval
113 Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver
114 written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.
115 (iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the
116 terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by
117 delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided
118 Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer
119 and Seller from all further obligations under this Contract.
120 (v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller
121 prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though
122 Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate
123 this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval
124 Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit
125 thereby releasing Buyer and Seller from all further obligations under this Contract.
126 (vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer
127 thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
128 default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
129 Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by
130 other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer
131 and Seller from all further obligations under this Contract.
132* ☐ (c) Assumption of existing mortgage (see Rider D for terms).
133* ☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

134 **CLOSING COSTS, FEES AND CHARGES**

135 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

136 (a) **COSTS TO BE PAID BY SELLER:**
137 • Documentary stamp taxes and surtax on deed, if any
138 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
139 • Title search charges (if Paragraph 9(c)(iii) is checked)
140* • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)
141 • Charges for FIRPTA withholding and reporting
     • HOA/Condominium Association estoppel fees
     • Recording and other fees needed to cure title
     • Seller's attorneys' fees
     • Other:_____
142 If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
143 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
144 Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
145 such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
146 (b) **COSTS TO BE PAID BY BUYER:**
147 • Taxes and recording fees on notes and mortgages
148 • Recording fees for deed and financing statements
149 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
150 • Survey (and elevation certification, if required)
151 • Lender's title policy and endorsements
152 • HOA/Condominium Association application/transfer fees
153 • Municipal lien search (if Paragraph 9(c)(ii) is checked)
154* • Other:_____
     • Loan expenses
     • Appraisal fees
     • Buyer's Inspections
     • Buyer's attorneys' fees
     • All property related insurance
     • Owner's Policy Premium (if Paragraph
      9 (c)(iii) is checked.)
155* (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
156 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
157 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
158 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
159 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
160 Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
161 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
162 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
163 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
164 closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a

Buyer's Initials _____ _____     Page 3 of 13     Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors³ and The Florida Bar. All rights reserved.

Serial#: 075941-000171-9970590

Form
Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/93c27aa1-82da-4d1a-8431-551ed458a73a
AuthentiSign ID: 0F0CC5E4-DA5E-EF11-86D4-6045BDEF834A
RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/6069237c-1a80-4c6b-b6c7-8824ed437521

165    search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
166    liens imposed pursuant to Chapters 153, 159 or 170, F.S., in favor of any governmental body, authority or agency.
167    **(CHECK ONE):**
168*    ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
169    premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
170    endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
171    provider(s) as Buyer may select; or
172*    ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
173    services related to Buyer's lender's policy, endorsements and loan closing; or
174*    ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall
175    furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a
176    continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for
177    reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing
178    continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not
179*    be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title
180    search ordered or performed by Closing Agent.
181    (d) **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property
182    surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
183    Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
184*    (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
185*    _____ at a cost not to exceed $_____. A home
186    warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
187    appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
188    (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
189    ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
190    ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
191    improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
192    imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
193    be paid in installments **(CHECK ONE):**
194*    ☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
195    Installments prepaid or due for the year of Closing shall be prorated.
196*    ☐ (b) Seller shall pay, in full, prior to or at the time of Closing, any assessment(s) allowed by the public body
197    to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be
198    deemed selected for such assessment(s).
199    IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
200    This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
201    (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to
202    Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K.

203                                   **DISCLOSURES**

204    **10. DISCLOSURES:**
205    (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
206    sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
207    exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
208    radon and radon testing may be obtained from your county health department.
209    (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
210    does not know of any improvements made to the Property which were made without required permits or made
211    pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79,
212    F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then
213    Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession,
214    knowledge, or control relating to improvements to the Property which are the subject of such open permits or
215    unpermitted improvements.
216    (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
217    desires additional information regarding mold, Buyer should contact an appropriate professional.
218    (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
219    zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
220    improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"

Buyer's Initials GGH CH                  Page 4 of 13                Seller's Initials ___
FloridaRealtors/FloridaBar-ASIS-6x    Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 075941-000171-9970590

RealityBackOffice document certificate: https://api.realitybackoffice.com/download_certificate?id=93c27aa1-82db-44fa-8431-11e458a7de4A
Authentisign ID: 0FCC3E4-DA3E-EF11-86C4-6045BBDEF834A

RealityBackOffice document certificate: https://api.realitybackoffice.com/download_certificate?id=6689237c-1a80-4c6b-b6c7-8f21ed437521

221   or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
222   Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
223   flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
224   through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
225·  may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
226   Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
227   obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
228   designation of Property.

229   (e)  **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
230        required by Section 553.996, F.S.

231   (f)  **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
232        mandatory.

233   (g)  **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
234        **CONTRACT   UNTIL   BUYER   HAS   RECEIVED   AND   READ   THE   HOMEOWNERS'**
235        **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

236   (h)  **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
237        PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
238        PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
239        IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
240        PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
241        COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

242   (i)  **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
243        Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
244        and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
245        is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
246        under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
247        V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
248        advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
249        FIRPTA.

250   (j)  **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
251        not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
252        sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
253        implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
254        has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
255        building, environmental or safety code violation.

256        **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257   **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
258        Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
259        IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

260   **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
261·  (a)  *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have ___0___ (if left blank, then 15)*
262        *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
263        *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
264        *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
265        *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
266        *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
267        *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
268        *prompt payment for such Inspections, for repair of damage to, and restoration of, the Property resulting*
269        *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
270        *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
271        *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
272        *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
273        *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
274        *repairs and improvements required by Buyer's lender.*

FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors³ and The Florida Bar.  All rights reserved.

Serial#: 075941-000171-9970590                                                                              Form
                                                                                                            Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate?c=93c27aa1-82da-44fa-8431-d71e458a73a0
Authentisign ID: 0F8CC5E4-DA9E-EF11-86D3-6045BD5F834A

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate?c=0063237c-1a80-4c6b-b6c7-0824ed437521

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

<p align="center">ESCROW AGENT AND BROKER</p>

13. **ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to Collection, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

14. **PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.

Form Simplicity

RealtyBackOffice document certificate: https://app.realtybackoffice.com/download_certificate/...
Authentisign ID: 0F8CC5E4-DA0E-EF11-86D4-6045BDCFB34A

RealtyBackOffice document certificate: https://app.realtybackoffice.com/download_certificate/6669257c-1a55-4e6b-b8e7-6621ed437521

331 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
332 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
333 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
334 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

335 <center>**DEFAULT AND DISPUTE RESOLUTION**</center>

336 **15. DEFAULT:**
337   (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
338       including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
339       for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
340       in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under
341       this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
342       rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
343       be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
344       shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
345   (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
346       reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
347       Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
348       from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
349       performance.
350 This Paragraph 15 shall survive Closing or termination of this Contract.
351 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
352 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
353 as follows:
354   (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
355       resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
356       16(b).
357   (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
358       Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
359       The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
360       sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
361       may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
362       16 shall survive Closing or termination of this Contract.
363 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
364 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
365 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
366 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
367 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

368 <center>**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**</center>

369 **18. STANDARDS:**
370   **A. TITLE:**
371     (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
372         Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
373         be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
374         or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
375         in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
376         subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
377         prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
378         Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
379         entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
380         10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
381         subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
382         addendum); provided, that, none prevent use of Property for RESIDENTIAL PURPOSES. If there exists at Closing
383         any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
384         be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
385         with law.

Form Simplicity

RealtyBackOffice document certificate: https://app.realty.backoffice.com/download_certificate/b00c27aa1-82eb-44fa-8431-d7fa458a7a21
Authentisign ID: 0F9CC3E4-0A3E-EF11-86D3-001DD80EFB34A

RealtyBackOffice document certificate: https://app.realty.backoffice.com/download_certificate/KC00237e1-1a80-4e5b-b6e7-3824ed137521

### STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

386 (ii)  **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
387 in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
388 delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
389 receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
390 receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
391 shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
392 written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
393 Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
394 Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,
395 deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
396 Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
397 (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
398 passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
399 electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
400 further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and
401 Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
402 thereby releasing Buyer and Seller from all further obligations under this Contract.
403 **B.   SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
404 encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
405 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
406 such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
407 than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
408 Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
409 prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
410 preparation of such prior survey, to the extent the affirmations therein are true and correct.
411 **C.   INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
412 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
413 **D.   LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
414 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
415 deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
416 the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
417 and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
418 Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
419 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
420 within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
421 Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
422 this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
423 thereunder.
424 **E.   LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
425 statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
426 repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
427 improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
428 general contractors, subcontractors, suppliers and materialmen in addition  to Seller's lien affidavit setting forth
429 names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
430 for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
431 paid or will be paid at Closing.
432 **F.   TIME: Time is of the essence** in this Contract. Calendar days, based on where the Property is located, shall
433 be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3,
434 any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or
435 inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5
436 U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or
437 Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a
438 day on which a national legal public holiday is observed.
439 **G.   FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under
440 this Contract or be liable to each other for damages so long as performance or non-performance of the right or
441 obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,

Buyer's Initials _GGH_  _CH_    Page 8 of 13    Seller's Initials _MS_ _____

FloridaRealtors/FloridaBar-ASIS-6x    Rev.7/23 © 2023 Florida Realtors¹ and The Florida Bar.  All rights reserved.

Serial#: 075941-000171-9970590

Form
Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/03c27bb1-820a-4afa-8431-b41e68a37bee
Authentisign ID: 0F8CC5E4-0A0E-EF11-88D4-6045BDEFB34A

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/6069237c-1b80-4c6b-b5c7-8824ed43752f

STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

442 caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather,
443 earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of
444 terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by
445 exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome.
446 The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents
447 performance, non-performance, or the availability of services, insurance or required approvals essential to Closing.
448 All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time
449 up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however,
450 if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond
451 Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit
452 shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

453 **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
454 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
455 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
456 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
457 Contract.

458 **I.  CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
459 (i)  **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
460 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
461 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
462 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
463 means.
464 (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
465 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
466 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
467 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
468 the survey, flood elevation certification, and documents required by Buyer's lender.
469 (iii) **FinCEN GTO REPORTING OBLIGATION.** If Closing Agent is required to comply with a U.S. Treasury
470 Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer
471 shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial
472 Owners, including photo identification, and related to the transaction contemplated by this Contract which are
473 required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to
474 Closing Agent's collection and report of said information to IRS.
475 (iv) **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment provides
476 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
477 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing**
478 **funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

479 **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
480 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
481 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
482 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
483 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
484 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
485 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
486 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
487 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
488 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
489 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

490 **K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
491 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
492 (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments
493 imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents
494 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
495 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
496 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
497 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
498 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/8605237c-1a80-4reb-b6c7-3824ed43792f
Authentisign ID: 0FBCC5E4-DA5E-EF11-86D4-6045BDE7834A

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/8605237c-1a80-4reb-b6c7-3824ed43792f

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail, facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been Collected in Closing Agent's accounts.

**T. RESERVED.**

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service

Buyer's Initials _JGH_ _GK_

Seller's Initials _NS_ _____

FloridaRealtors/FloridaBar-ASIS-6x    Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 075941-000171-9970590

Form
Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate?id=b93c27aa1-82da-44fa-8431-71e158a7ab
Authentisign ID: 0F8CC5E4-DA0E-EF11-86D4-6045BD0EF834A

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate?id=600b237c-1a80-4c0b-b5c7-8824ed1375zf

### STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

556 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557 from the IRS authorizing a reduced amount of withholding.
558 (i) No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563 to the IRS.
564 (ii) If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566 reduced sum required, if any, and timely remit said funds to the IRS.
567 (iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569 received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
570 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
574 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575 transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577 disbursement in accordance with the final determination of the IRS, as applicable.
578 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579 8288 and 8288-A, as filed.
580 **W. RESERVED**
581 **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
582 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
583 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
584 *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
585 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
586 *Closing.*

### ADDENDA AND ADDITIONAL TERMS

588 **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
589 Contract (**Check if applicable**):

| | | | | | |
|---|---|---|---|---|---|
| [x] A. | Condominium Rider | [ ] M. | Defective Drywall | [ ] X. | Kick-out Clause |
| [ ] B. | Homeowners' Assn. | [ ] N. | Coastal Construction Control | [ ] Y. | Seller's Attorney Approval |
| [ ] C. | Seller Financing | | Line | [ ] Z. | Buyer's Attorney Approval |
| [ ] D. | Mortgage Assumption | [ ] O. | Insulation Disclosure | [ ] AA. | Licensee Property Interest |
| [ ] E. | FHA/VA Financing | [x] P. | Lead Paint Disclosure (Pre-1978) | [ ] BB. | Binding Arbitration |
| [ ] F. | Appraisal Contingency | [ ] Q. | Housing for Older Persons | [ ] CC. | Miami-Dade County |
| [ ] G. | Short Sale | [ ] R. | Rezoning | | Special Taxing District |
| [ ] H. | Homeowners/Flood Ins. | [ ] S. | Lease Purchase/ Lease Option | [ ] DD. | Seasonal/Vacation Rentals |
| [ ] I. | RESERVED | [ ] T. | Pre-Closing Occupancy | [ ] EE. | PACE Disclosure |
| [ ] J. | Interest-Bearing Acct. | [ ] U. | Post-Closing Occupancy | [ ] Other: | |
| [ ] K. | RESERVED | [ ] V. | Sale of Buyer's Property | | |
| [ ] L. | RESERVED | [ ] W. | Back-up Contract | | |

Buyer's Initials *GGH* *CH*    Page 11 of 13    Seller's Initials _____ _____

RealtyBackOffice document certificate: https://app.realtybackoffice.com/download_certificate/0f3c27aa1-820a-41fa-8431-12da58a73a
Authenticity ID: 0F8CC5E4-0A3E-EF11-8607-00456DEFa34A

RealtyBackOffice document certificate: https://app.realtybackoffice.com/download_certificate/6069237e-1a50-4c6b-b5c7-0824ed237f3f

590*    20. **ADDITIONAL TERMS:** _____

591

592    ~~SELLER WILL PAY ALL BACK PROPERTY TAXES AND HOA~~

593    ~~FEES AT CLOSING.~~

594    ~~BUYER WAIVES AN INSPECTION.~~

595    ~~BUYER ACCEPTS PROPERTY WITH TENANTS/SQUATTERS IN~~

596    ~~PLACE.~~

597

598    ~~SALE IS SUBJECT TO COURT APPROVAL.~~

599    ~~BUYER'S ESCROW DEPOSIT IS FULLY REFUNDABLE SHOULD~~

600    ~~THE COURT NOT APPROVE THE SALE.~~

601    ~~ALL OTHER TERMS REMAIN.~~

602

603

604

605

606

607

608                            **COUNTER-OFFER**

609*    ☐ Seller counters Buyer's offer.

610                    [The remainder of this page is intentionally left blank.

611            This Contract continues with line 612 on Page 13 of 13.]

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/6669237c-1a80-4ebb-c8c7-8431-68049EDEF634A
Authentisign ID: 0F6CC5E4-DA5E-EF11-86D4-8049EDEF634A

RealtyBackOffice document certificate: https://api-realtybackoffice.com/download_certificate/6669237c-1a80-4ebb-c8c7-8521-1ed137521

| 612 | THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING. |
| --- | --- |
| 613 | |

614  THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.

615  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
616  *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
617  *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
618  *interested persons.*

619  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
620  TO BE COMPLETED.

---

621  **ATTENTION: SELLER AND BUYER**

622  **CONVEYANCES TO FOREIGN BUYERS:** Part III of Chapter 692, Sections 692.201 - 692.205, Florida Statutes,
623  2023 (the "Act"), in part, limits and regulates the sale, purchase and ownership of certain Florida properties by
624  certain buyers who are associated with a "foreign country of concern", namely: the People's Republic of China, the
625  Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of
626  Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic. **It is a crime to buy or knowingly**
627  **sell property in violation of the Act.**

628  **At time of purchase, Buyer must provide a signed Affidavit which complies with the requirements of the**
629  **Act.** Seller and Buyer are advised to seek legal counsel regarding their respective obligations and liabilities under
630  the Act.

---

631*  Buyer: _GRAZiella G. Hediger_____  Date: _07/02/2024___

632*  Buyer: _Andreas Hediger_____  Date: _07/02/2024___

633*  Seller: _[signature] Chpt 7 Trustee Case 19-52861_  Date: _7/8/24_

634*  Seller: _____  Date: _____

635  Buyer's address for purposes of notice          Seller's address for purposes of notice
636*  _____          _____
637*  _____          _____
638*  _____          _____

639  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
640  entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
641  Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
642  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
643  retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
644  made by Seller or Listing Broker to Cooperating Brokers.

645*  _____Chris Creegan - Alex Paris_____          _____Christine S Bowen_____
646  **Cooperating Sales Associate, if any**          **Listing Sales Associate**

647*  _____Creegan Property Group_____          _____RE/MAX TOWN &amp; COUNTRY REALTY_____
648  **Cooperating Broker, if any**          **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors¹ and The Florida Bar.  All rights reserved.
Serial#: 075941-000171-9970590

Form
Simplicity

RealtyBackOffice document certificate https://app.realtybackoffice.com/download_certificate...8431-...
Authentisign ID: 0FBCC5E4-DA0E-EF11-86D4-6045BDEFB64A

**RE/MAX**

**Comprehensive Rider to the
Residential Contract For Sale And Purchase**
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR *GH  (RK*

**Realtors**

If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between Trustee for Raul Villavicencio Jose ___ Case 19-52861 ___ (SELLER)
and____ Graziella Hediger & Andreas Hediger _____ (BUYER)
concerning the Property described as____ 5465  HANSEL AVE _____ 1
ORLANDO _____ FL  32809

**Buyer's Initials** *GH*  *(RK)*  **Seller's Initials** *N*

## A. CONDOMINIUM RIDER

1. **CONDOMINIUM ASSOCIATION APPROVAL:**
The Association's approval of Buyer (CHECK ONE): ☒ is ☐ is not required. If approval is required, this Contract is
contingent upon Buyer being approved by the Association no later than _____ (if left blank, then 5) days
prior to Closing. Within _____ (if left blank, then 5) days after Effective Date Seller shall initiate the approval
process with the Association and Buyer shall apply for such approval. Buyer and Seller shall sign and deliver any
documents required by the Association in order to complete the transfer of the Property and each shall use diligent
effort to obtain such approval, including making personal appearances if required. If Buyer is not approved within the
stated time period, this Contract shall terminate and Buyer shall be refunded the Deposit, thereby releasing Buyer and
Seller from all further obligations under this Contract.

2. **RIGHT OF FIRST REFUSAL:**
   (a) The Association (CHECK ONE): ☐ has ☒ does not have a right of first refusal ("Right"). If the Association has
   a Right, this Contract is contingent upon the Association, within the time permitted for the exercise of such Right,
   either providing written confirmation to Buyer that the Association is not exercising that Right, or failing to timely
   exercise such Right pursuant to the terms of the Declaration of Condominium ("Declaration", which reference
   includes all amendments thereto).
   (b) The members of the Association (CHECK ONE): ☐ have ☒ do not have a Right. If the members do have a
   Right, this Contract is contingent upon the members, within the time permitted for the exercise of such Right, either
   providing written confirmation to Buyer that the members are not exercising that Right, or failing to timely exercise
   such Right pursuant to the terms of the Declaration.
   (c) Buyer and Seller shall, within _____ (if left blank, then 5) days after Effective Date, sign and deliver
   any documents required as a condition precedent to the exercise of the Right, and shall use diligent effort to submit
   and process the matter with the Association and members, including personal appearances, if required.
   (d) If, within the stated time period, the Association, the members of the Association, or both, fail to provide the written
   confirmation or the Right has not otherwise expired, then this Contract shall terminate and the Deposit shall be
   refunded to the Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
   (e) If the Association or a member timely exercises its or their Right, this Contract shall terminate and the Deposit shall
   be refunded to Buyer (unless this Contract provides otherwise), thereby releasing Buyer and Seller from all further
   obligations under this Contract, and Seller shall pay to Broker the full commission at Closing in recognition that
   Broker procured the sale.

3. **FEES; ASSESSMENTS; PRORATIONS; LITIGATION:**
   (a) Condominium Association assessment(s) and Rents: Seller represents that the current Association assessment(s)
   installments is/are

   $____500.73____ payable (CHECK ONE): ☒ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and if more than one Association assessment
   $_____ payable (CHECK ONE): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and the current rent on recreation areas, if any, is
   $_____ payable (CHECK ONE): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

Page 1 of 3   A. CONDOMINIUM RIDER  (SEE CONTINUATION)
CR-6x Rev. 3/2023 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Christine Bowen - RE/MAX TOWN & COUNTRY REALTY] www.transactiondesk.com.  TRANSACTIONS

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/a-8431-...
Authentisign ID: 0F6CC8E4-DA0E-EF11-8BD4-6045BDEF847A

## A. CONDOMINIUM RIDER (CONTINUED)

All annual assessments levied by the Association and rent on recreational areas, if any, shall be made current by Seller at Closing, and Buyer shall reimburse Seller for prepayments.

(b) Fees: Seller shall, at Closing, pay all fines imposed against the Unit by the Condominium Association as of Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

*If Property is part of a Homeowners' Association, see Rider B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE for further information including additional assessments and fees.*

(c) Special Assessments and Prorations:

(i) Seller represents that Seller is not aware of any special or other assessment that has been levied by the Association or that has been an item on the agenda, or reported in the minutes, of the Association within twelve (12) months prior to Effective Date, ("pending") except as follows: _____

_____

(ii) If special assessments levied or pending exist as of the Effective Date are disclosed above by Seller and may be paid in installments (**CHECK ONE**): ☐ Buyer ☐ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**

(iii) If special assessments levied or pending exist as of the Effective Date and have not been disclosed above by Seller, then Seller shall pay such assessments in full at the time of Closing.

(iv) If, after Effective Date, the Association imposes a special assessment for improvements, work or services, which was not pending as of the Effective Date, then Seller shall pay all amounts due before Closing Date and Buyer shall pay all amounts due after Closing Date.

(v) A special assessment shall be deemed levied for purposes of this paragraph on the date when the assessment has been approved as required for enforcement pursuant to Florida law and the condominium documents listed in Paragraph 5.

(vi) Association assets and liabilities, including Association reserve accounts, shall not be prorated.

(d) Litigation: Seller represents that Seller is not aware of pending or anticipated litigation affecting the Property or the common elements, if any, except as follows: _____

_____

_____

**4. SPRINKLER SYSTEM RETROFIT:**
If, pursuant to Sections 718.112(2)(n), F.S., the Association has voted to forego retrofitting its fire sprinkler system or handrails and guardrails for the condominium units, then prior to Closing Seller shall furnish to Buyer the written notice of Association's vote to forego such retrofitting.

**5. NON-DEVELOPER DISCLOSURE:**
(CHECK ONE):

☐ (a) THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS CONTRACT.

☑ (b) THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND

CR-6x  Rev. 3/2023 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

This software is licensed to [Christine Bowen - RE/MAX TOWN & COUNTRY REALTY] www.transactiondesk.com.



RealtyBackOffice document certificate https://api.realtybackoffice.com/download_certificate...e-8431-...
Authensign ID: 0FECC5E4-DA3E-EF11-8BD4-6045BDEFB34A

LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

6. **BUYER'S REQUEST FOR DOCUMENTS:**
Buyer is entitled, at Seller's expense, to current copies of the condominium documents specified in Paragraph 5, above. Buyer (CHECK ONE): ☑ requests ☐ does not request a current copy of the documents specified in Paragraph 5, above. If this Contract does not close, Buyer shall immediately return the documents to Seller or reimburse Seller for the cost of the documents.

7. **BUYER'S RECEIPT OF DOCUMENTS:**
**(COMPLETE AND CHECK ONLY IF CORRECT)** ☐ Buyer received the documents described in Paragraph 5, above, on _____.

8. **COMMON ELEMENTS; PARKING:**
The Property includes the unit being purchased and an undivided interest in the common elements and appurtenant limited common elements of the condominium, as specified in the Declaration. Seller's right and interest in or to the use of the following parking space(s), garage, and other areas are included in the sale of the Property and shall be assigned to Buyer at Closing, subject to the Declaration:
Parking Space(s) # _127___    Garage # _____    Other: _____

9. **INSPECTIONS AND REPAIRS:**
The rights and obligations arising under Paragraphs 11 and 12 of this Contract to maintain, repair, replace or treat are limited to Seller's individual condominium unit and unless Seller is otherwise responsible do not extend to common elements, limited common elements, or any other part of the condominium property.

10. **GOVERNANCE FORM; MILESTONE INSPECTION REPORT; STRUCTURAL INTEGRITY RESERVE STUDY:**
    (a) GOVERNANCE FORM: Pursuant to Chapter 718, F.S., Buyer is entitled to receive from Seller a copy of the governance form in the format provided by the Division of Florida Condominiums, Timeshares and Mobile Homes of the Department of Business and Professional Regulation, summarizing governance of condominium associations.

    (b) MILESTONE INSPECTION REPORT SUMMARY: Pursuant to Section 718.503(2)(a)5, F.S., Buyer who has entered into this Contract is entitled, at Seller's expense, to receive from Seller, before the sale of the Property, a copy of the inspector-prepared summary of the milestone inspection report, as described in Sections 553.899 and 718.301(4)(p), Florida Statutes, if (1) applicable and (2) the summary has been submitted to the Association.

    (c) STRUCTURAL INTEGRITY RESERVE STUDY: Pursuant to Section 718.503(2)(a)6, F.S., Buyer who has entered into this Contract is entitled, at Seller's expense, to receive from Seller, before the sale of the Property, a copy of the Association's most recent structural integrity reserve study or a statement that the Association has not completed a structural integrity reserve study.

CR-6x Rev. 3/2023 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Christine Bowen - RE/MAX TOWN & COUNTRY REALTY] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

RealtyBackOffice document certificate: https://app.realtybackoffice.com/download_certificate... ...b-8431-f... ...b84A
Authentisign ID: 0F6CC3EE-DA9E-EF11-86D4-6003C3DEB84A

RE/MAX

## Comprehensive Rider to the
## Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

FloridaRealtors

If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract For Sale And Purchase between Trustee for/Raul Villavicencio Jose (A3c 19 - 5286(  (SELLER)
and         Graziella Hediger & Andreas Hediger                                                                  (BUYER)
concerning the Property described as      5465    Hansel Ave                                                      1
ORLANDO                                                    FL          32809

Buyer's Initials    _GH_    _AH_    Seller's Initials    _NS_    _____

## P. LEAD-BASED PAINT DISCLOSURE
### (Pre-1978 Housing)

### Lead-Based Paint Warning Statement
"Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspection in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

**Seller's Disclosure (INITIAL)**
_MS_ _____ (a) Presence of lead-based paint or lead-based paint hazards (CHECK ONE BELOW):
_MT_          ☐ Known lead-based paint or lead-based paint hazards are present in the housing.
              ☒ Seller has no knowledge of lead-based paint or lead-based paint hazards in the housing.
        (b) Records and reports available to the Seller (CHECK ONE BELOW):
              ☐ Seller has provided the Buyer with all available records and reports pertaining to lead-based paint or lead-based paint hazards in the housing. List documents: _____

              X Seller has no reports or records pertaining to lead-based paint or lead-based paint hazards in the housing.

**Buyer's Acknowledgement (INITIAL)**
_GH_ _AH_ (c) Buyer has received copies of all information listed above.

_GH_ _AH_ (d) Buyer has received the pamphlet Protect Your Family from Lead in Your Home.

_GH_ _AH_ (e) Buyer has (CHECK ONE BELOW):
              ☐ Received a 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards; or
              ☑ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards.

**Licensee's Acknowledgement (INITIAL)**
_CB_ _____ (f) Licensee has informed the Seller of the Seller's obligations under 42 U.S.C. 4852(d) and is aware of Licensee's responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | | |
|---|---|---|---|---|
| SELLER Raul Villavicencio Jose | 7/9/24 Date | BUYER Graziella Hediger Andreas Hediger | 07/09/2024 Date 07/10/2024 |
| SELLER Jose L Valvicencio Trustee for | Date | BUYER AR:O | Date 7/9/2024 |
| Listing Licensee Christine Bowen (A3c 19-5286 | Date | Selling Licensee | Date |

Any person or persons who knowingly violate the provisions of the Residential Lead-Based Paint Hazard Reduction Act of 1992 may be subject to civil and criminal penalties and potential triple damages in a private civil lawsuit.
Page 1 of 1   P. LEAD-BASED PAINT DISCLOSURE
CR-6 Rev. 10/21 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

Authenlisign ID: 0F6CC5E4-DA3E-EF11-86D4-6045BDEF834A



# RESPA AFFILIATED BUSINESS DISCLOSURE STATEMENT

THIS IS TO GIVE YOU NOTICE that RE/MAX 200 Realty and RE/MAX Town & Country Realty have a business relationship with FBC Mortgage through a Marketing Services Agreement/Office Lease and an indirect equity ownership interest in Leading Edge Title. Because of these relationships, a referral to these companies may provide RE/MAX 200 Realty and RE/MAX Town & Country Realty and/or their associates a financial or other benefit.

Set forth is the ESTIMATED charge, or range of charges, for the settlement of services should you choose to use Leading Edge Title as your closing agent:

| | |
|---|---|
| Owners Title Policy | $5.75/thousand |
| Settlement Fee | $250-$990* (Excludes Multiple Mortgages and Short Sales) |
| Search Fee | $150 |
| Lender's Title Policy & ALTA 9.1 Endorsement | $300 & 10% of the Total Policy Premiums |
| Owner's Policy FL ALTA 9.2 Endorsement | 10% of the Total Policy Premiums |
| Lender's FL ALTA 5.1 & 8.1 Endorsement | $50 each |
| FEDEX / Wire /Archive / Erecording Fees | $72 |

You are NOT REQUIRED to use any of the companies noted above as a condition for purchase, sale, finance, refinance, insurance, warranty, or closing of the subject property.

**THERE ARE FREQUENTLY OTHER SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

**IF AN AGENT HAS AN AFFILIATED BUSINESS ARRANGEMENT WITH ANY OTHER ENTITY THEY ARE REQUIRED TO DISCLOSE SAME ON A SEPARATE ADDENDUM TO BE SIGNED BY ALL PARTIES.**

## ACKNOWLEDGEMENT

I/We have read this disclosure form, and understand that RE/MAX 200 Realty and RE/MAX Town & Country Realty and/or Associate is referring me/us to purchase the above-described services from the providers above and may receive a financial or other benefit as the result of the referral.

Buyer: X_____    Date: _____    Seller *MYRON TERLECKY* Date: 07/10/24
CONTACT L.A. 1

Buyer: X_____    Date: _____    Seller: X_____    Date: _____

Rvsd 08142018

This software is licensed to [Christine Bowen - RE/MAX TOWN & COUNTRY REALTY] www.transactiondesk.com.                    InstanetFORMS

Authentisign ID: 0F6CC5E4-DA3E-EF11-86D4-6045BDEF834A

# RE/MAX

 Florida Realtors®

## Wire Fraud Prevention Notice

Brokerage Name: _____ RE/MAX TOWN & COUNTRY REALTY _____

<u>Always independently verify wiring instructions sent via email</u>

Criminals/hackers are targeting email accounts of various parties involved in real estate transactions (e.g., lawyers, title agents, mortgage brokers, real estate agents). These emails are convincing and sophisticated. Among other concerns, this has led to fraudulent wiring instructions being used to divert funds to the criminal's bank account. These emails may look like legitimate emails from the proper party. If you receive an email regarding instructions that contains any suspicious information, do not click on any links that may be in the email and do not reply.

Broker strongly recommends that Buyer, Seller, and their respective attorneys and others working on a transaction, refrain from placing any sensitive personal and financial information in an email, directly or through an email attachment. When there is a need to share Social Security numbers, bank accounts, credit card numbers, wiring instructions or similar sensitive information, Broker strongly recommends using more secure means, such as providing the information in person, over the phone, or through secure mail or package services, whenever possible. **In addition, <u>before</u> Buyer or Seller wires any funds to any party (including Buyer or Seller's attorney, title agent, mortgage broker, or real estate broker) personally call them to confirm the information is legitimate (i.e., confirm the ABA routing number or SWIFT code and credit account number).** Buyer and Seller should call them at a number that is independently obtained (e.g., from this Contract, the recipient's website, etc.) and not use the number in the email in order to be sure that the contact is a legitimate party.

Buyer/Seller Name (Print): _____ MYRON TERLECKY _____

Buyer/Seller Signature: _____ *MYRON TERLECKY* _____

Date: _____ 07/10/2024 _____

Buyer/Seller Name (Print): _____

Buyer/Seller Signature: _____

Date: _____

WFPN-3   Rev 2/20

© 2020 Florida Realtors®

This software is licensed to [Christine Bowen - RE/MAX TOWN & COUNTRY REALTY]
www.transactiondesk.com.

InstanetFORMS

# EXHIBIT D

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate...0-8635-...

# "AS IS" Residential Contract For Sale And Purchase

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**



1\*   **PARTIES:** _____ CH 7 Case 19-52861 _____ ("Seller"),
2\*   and _____ Graziella Hediger & Andreas Hediger _____ ("Buyer"),
3   agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4   (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5   and any riders and addenda ("Contract"):
6   **1. PROPERTY DESCRIPTION:**        Orlando
7\*   (a) Street address, city, zip: _____ 5449 Hansel AVENUE #1, ~~Orl&o,~~ FL 32809 _____
8\*   (b) Located in: _____ Orange _____ County, Florida. Property Tax ID #: ___ 292313913170 ___
9\*   (c) Real Property: The legal description is CAMELOT BY THE LAKE CONDO CB 5/92 UNIT 17 BLDG M
10
11
12   together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13   attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14   by other terms of this Contract.
15   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16   which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17   purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18   and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s),
19   doorbell(s), television wall mount(s) and television mounting hardware, security gate and other access
20   devices, mailbox keys, and storm shutters/storm protection items and hardware ("Personal Property").
21\*   Other Personal Property items included in this purchase are: _____
22
23   Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24\*   (e) The following items are excluded from the purchase: _____
25

26\*               **PURCHASE PRICE AND CLOSING**

27\*   **2. PURCHASE PRICE** (U.S. currency):..............................................................$    106,000.00
28\*   (a) Initial deposit to be held in escrow in the amount of **(checks subject to Collection)** ....... $    5,300.00
29   The initial deposit made payable and delivered to "Escrow Agent" named below
30\*   **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within _____ (if left
31   blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
32   OPTION (ii) SHALL BE DEEMED SELECTED.
33\*   Escrow Agent Name: _____ LEADING EDGE TITLE _____
34\*   Address: 1315 Tuskawilla RD, STE 101 Winter Springs, FL 32708 Phone: ___ 407-699-7773 ___
35\*   E-mail: _____ Angie@letcf.com _____ Fax: _____
36\*   (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
37\*   days after Effective Date ............................................................$_____
38   (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39\*   (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 .........._____
40\*   (d) Other: _____ .............. $_____
41   (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42\*   transfer or other Collected funds (see STANDARD S)............................$    100,700.00
43   **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44   (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45\*   _____ July 12, 2024 _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46   Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47   the counter-offer is delivered.
48   (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49   initialed and delivered this offer or final counter-offer ("Effective Date").
50   **4. CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51   received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52   furnished by each party pursuant to this Contract are delivered ("Closing"). Unless modified by other provisions of

Buyer's Initials ___ _GH_ _AH_ ___        Page 1 of 13        Seller's Initials _MT_ ___
FloridaRealtors/FloridaBar-ASIS-6x    Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate...8-8635-8...

this Contract, the Closing shall occur on _____ August 20, 2024 _____ ("Closing Date"), at the time established by the Closing Agent.

**5. EXTENSION OF CLOSING DATE:**

(a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7 days.

(b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

(a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-CLOSING OCCUPANCY BY BUYER.

(b) ☒ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall not be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract. IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.

<center>FINANCING</center>

**8. FINANCING:**

☒ (a) This is a cash transaction with no financing contingency.

☐ (b) This Contract is contingent upon, within _____ (if left blank, then 30) days after Effective Date ("Loan Approval Period"): (1) Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) mortgage loan for purchase of the Property for a **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").

(i) Buyer shall make application for Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval unless Rider V is attached. Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.

(ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions of Loan Approval. Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status

Form Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate...8635-8...

109   and progress and release preliminary and finally executed closing disclosures and settlement statements, as
110   appropriate and allowed, to Seller and Broker.

111   (iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing
112   prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval
113   Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver
114   written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.

115   (iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the
116   terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by
117   delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided
118   Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer
119   and Seller from all further obligations under this Contract.

120   (v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller
121   prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though
122   Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate
123   this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval
124   Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit
125   thereby releasing Buyer and Seller from all further obligations under this Contract.

126   (vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer
127   thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
128   default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
129   Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by
130   other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer
131   and Seller from all further obligations under this Contract.

132*   ☐ (c) Assumption of existing mortgage (see Rider D for terms).
133*   ☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

134   **CLOSING COSTS, FEES AND CHARGES**

135   **9.  CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

136   **(a)  COSTS TO BE PAID BY SELLER:**
137   · Documentary stamp taxes and surtax on deed, if any        · HOA/Condominium Association estoppel fees
138   · Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)   · Recording and other fees needed to cure title
139   · Title search charges (if Paragraph 9(c)(iii) is checked)      · Seller's attorneys' fees
140*   · Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked) · Other:_____
141   · Charges for FIRPTA withholding and reporting

142   If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
143   a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
144   Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
145   such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

146   **(b)  COSTS TO BE PAID BY BUYER:**
147   · Taxes and recording fees on notes and mortgages           · Loan expenses
148   · Recording fees for deed and financing statements          · Appraisal fees
149   · Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked) · Buyer's Inspections
150   · Survey (and elevation certification, if required)          · Buyer's attorneys' fees
151   · Lender's title policy and endorsements                     · All property related insurance
152   · HOA/Condominium Association application/transfer fees      · Owner's Policy Premium (if Paragraph
153   · Municipal lien search (if Paragraph 9(c)(ii) is checked)      9 (c)(iii) is checked.)
154*   · Other:_____

155*   **(c)  TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
156   then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
157   licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
158   Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
159   obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
160   Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
161   premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
162   forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
163   and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
164   closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a

Form Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate...0-8635-4...0-0797124

165 search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
166 liens imposed pursuant to Chapters 153, 159 or 170, F.S., in favor of any governmental body, authority or agency.
167 **(CHECK ONE):**
168* ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
169 premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
170 endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
171 provider(s) as Buyer may select; or
172* ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
173 services related to Buyer's lender's policy, endorsements and loan closing; or
174* ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall
175 furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a
176 continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for
177 reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing
178 continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not
179* be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title
180 search ordered or performed by Closing Agent.
181 (d) **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property
182 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
183 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
184* (e) **HOME WARRANTY:** At Closing,☐ Buyer ☐Seller ☒N/A shall pay for a home warranty plan issued by
185* _____ at a cost not to exceed $_____. A home
186 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
187 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
188 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
189 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
190 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
191 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
192 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
193 be paid in installments **(CHECK ONE):**
194* ☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
195 Installments prepaid or due for the year of Closing shall be prorated.
196* ☐ (b) Seller shall pay, in full, prior to or at the time of Closing, any assessment(s) allowed by the public body
197 to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be
198 deemed selected for such assessment(s).
199 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
200 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
201 (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to
202 Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K.

203 **DISCLOSURES**

204 **10. DISCLOSURES:**
205 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
206 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
207 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
208 radon and radon testing may be obtained from your county health department.
209 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
210 does not know of any improvements made to the Property which were made without required permits or made
211 pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79,
212 F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then
213 Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession,
214 knowledge, or control relating to improvements to the Property which are the subject of such open permits or
215 unpermitted improvements.
216 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
217 desires additional information regarding mold, Buyer should contact an appropriate professional.
218 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
219 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
220 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"

Buyer's Initials _____ _____    Page 4 of 13    Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-6x    Rev.7/23 © 2023 Florida Realtors¹ and The Florida Bar. All rights reserved.

Serial#: 082993-000172-0797124

Form
Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certifica...0-8635-5...

221 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
222 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
223 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
224 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
225* may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
226 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
227 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
228 designation of Property.

229 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
230 required by Section 553.996, F.S.

231 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
232 mandatory.

233 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
234 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
235 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

236 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
237 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
238 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
239 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
240 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
241 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

242 (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
243 Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
244 and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
245 is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
246 under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
247 V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
248 advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
249 FIRPTA.

250 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
251 not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
252 sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
253 implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
254 has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
255 building, environmental or safety code violation.

256 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
258 Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
259 IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

260 **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
261* (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __0__ (if left blank, then 15)*
262 *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
263 *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
264 *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
265 *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
266 *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
267 *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
268 *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
269 *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
270 *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
271 *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
272 *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
273 *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
274 *repairs and improvements required by Buyer's lender.*


Form Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/...-8635-8...-0797124

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

**ESCROW AGENT AND BROKER**

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida, subject to Collection, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate...0-8635-...

Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

## DEFAULT AND DISPUTE RESOLUTION

**15. DEFAULT:**

    (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

    (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

    (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

    (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

**18. STANDARDS:**

**A. TITLE:**

    (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.


Form Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certifica... -8635-8...

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

386  (ii)  **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
387  in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
388  delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
389  receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
390  receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
391  shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
392  written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
393  Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
394  Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,
395  deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
396  Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
397  (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
398  passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
399  electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
400  further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and
401  Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
402  thereby releasing Buyer and Seller from all further obligations under this Contract.
403  **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
404  encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
405  governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
406  such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
407  than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
408  Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
409  prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
410  preparation of such prior survey, to the extent the affirmations therein are true and correct.
411  **C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
412  the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
413  **D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
414  tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
415  deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
416  the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
417  and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
418  Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
419  6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
420  within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
421  Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
422  this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
423  thereunder.
424  **E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
425  statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
426  repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
427  improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
428  general contractors, subcontractors, suppliers and materialmen in addition  to Seller's lien affidavit setting forth
429  names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
430  for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
431  paid or will be paid at Closing.
432  **F.  TIME: Time is of the essence in this Contract.** Calendar days, based on where the Property is located, shall
433  be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3,
434  any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or
435  inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5
436  U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or
437  Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a
438  day on which a national legal public holiday is observed.
439  **G.  FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under
440  this Contract or be liable to each other for damages so long as performance or non-performance of the right or
441  obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,

Buyer's Initials _____ _____     Page 8 of 13     Seller's Initials  _____

Form
Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/...8635-8...x40

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

442  caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather,
443  earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of
444  terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by
445  exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome.
446  The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents
447  performance, non-performance, or the availability of services, insurance or required approvals essential to Closing.
448  All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time
449  up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however,
450  if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond
451  Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit
452  shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
453  **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
454  personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
455  described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
456  transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
457  Contract.
458  **I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
459  (i)  **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
460  the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
461  is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
462  insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
463  means.
464  (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
465  sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
466  owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
467  receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
468  the survey, flood elevation certification, and documents required by Buyer's lender.
469  (iii)  **FinCEN GTO REPORTING OBLIGATION.** If Closing Agent is required to comply with a U.S. Treasury
470  Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer
471  shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial
472  Owners, including photo identification, and related to the transaction contemplated by this Contract which are
473  required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to
474  Closing Agent's collection and report of said information to IRS**.**
475  (iv)  **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment
476  provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
477  procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing**
478  **funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
479  **J.  ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
480  for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
481  escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
482  for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
483  Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
484  date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
485  Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
486  simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
487  convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
488  for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
489  except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
490  **K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
491  the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
492  (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments
493  imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents
494  and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
495  in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
496  by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
497  to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
498  current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/...0-8635-8...

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail, facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been Collected in Closing Agent's accounts.

**T. RESERVED.**

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service

Form
Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate...0-8635-4...

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

556 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557 from the IRS authorizing a reduced amount of withholding.
558 (i)   No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563 to the IRS.
564 (ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566 reduced sum required, if any, and timely remit said funds to the IRS.
567 (iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569 received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
570 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
574 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575 transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577 disbursement in accordance with the final determination of the IRS, as applicable.
578 (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579 8288 and 8288-A, as filed.
580 **W.  RESERVED**
581 **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
582 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
583 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
584 *subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This*
585 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
586 *Closing.*

### ADDENDA AND ADDITIONAL TERMS

588* **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
589 Contract (**Check if applicable**):

| | | | |
|---|---|---|---|
| [x] A. Condominium Rider | [ ] M. Defective Drywall | [ ] X. Kick-out Clause |
| [ ] B. Homeowners' Assn. | [ ] N. Coastal Construction Control | [ ] Y. Seller's Attorney Approval |
| [ ] C. Seller Financing | Line | [ ] Z. Buyer's Attorney Approval |
| [ ] D. Mortgage Assumption | [ ] O. Insulation Disclosure | [ ] AA. Licensee Property Interest |
| [ ] E. FHA/VA Financing | [x] P. Lead Paint Disclosure (Pre-1978) | [ ] BB. Binding Arbitration |
| [ ] F. Appraisal Contingency | [ ] Q. Housing for Older Persons | [ ] CC. Miami-Dade County |
| [ ] G. Short Sale | [ ] R. Rezoning | Special Taxing District |
| [ ] H. Homeowners/Flood Ins. | [ ] S. Lease Purchase/ Lease Option | [ ] DD. Seasonal/Vacation Rentals |
| [ ] I. RESERVED | [ ] T. Pre-Closing Occupancy | [ ] EE. PACE Disclosure |
| [ ] J. Interest-Bearing Acct. | [ ] U. Post-Closing Occupancy | [ ] Other:_____ |
| [ ] K. RESERVED | [ ] V. Sale of Buyer's Property | _____ |
| [ ] L. RESERVED | [ ] W. Back-up Contract | _____ |

Buyer's Initials *GH   GH*

Seller's Initials *MT*

FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 082993-000172-0797124



RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certifica...0-8635-...

590* **20. ADDITIONAL TERMS:** SELLER WIL PAY ALL BACK PROPERTY TAXES AND OVERDUE HOA FEES AT
591 CLOSING.
592 BUYER WAIVES INSPECTION.
593 BUYER ACCEPTS PROPERTY WITH TENANTSSQUATTERS IN PLACE.
594 SALE IS SUBJECT TO COURT APPROVAL.
595 BUYER ESCROW DEPOSIT IS FULLY REFUNDABLE IF THE COURT DOES NOT APPROVE THE SALE.
596 ALL OTHER TERMS REMAIN THE SAME.
597
598
599
600
601
602
603
604
605
606
607

608                 **COUNTER-OFFER**    *GH*   *AH*   [MT]

609* ☐ Seller counters Buyer's offer.

610              **[The remainder of this page is intentionally left blank.**
611              **This Contract continues with line 612 on Page 13 of 13.]**

Form Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate

612 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
613 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

614 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

615 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
616 *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
617 *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
618 *interested persons.*

619 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
620 TO BE COMPLETED.

---

621 **ATTENTION: SELLER AND BUYER**

622 **CONVEYANCES TO FOREIGN BUYERS:** Part III of Chapter 692, Sections 692.201 - 692.205, Florida Statutes,
623 2023 (the "Act"), in part, limits and regulates the sale, purchase and ownership of certain Florida properties by
624 certain buyers who are associated with a "foreign country of concern", namely: the People's Republic of China, the
625 Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of
626 Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic. **It is a crime to buy or knowingly**
627 **sell property in violation of the Act.**

628 **At time of purchase, Buyer must provide a signed Affidavit which complies with the requirements of the**
629 **Act.** Seller and Buyer are advised to seek legal counsel regarding their respective obligations and liabilities under
630 the Act.

---

631* Buyer: _Graziella Hediger_____  Date: _07/12/2024_

632* Buyer: _Andreas Hediger_____  Date: _07/12/2024_

633* Seller: _MYRON TERLECKY_____  Date: _07/14/24_

634* Seller: _____  Date: _____

635 Buyer's address for purposes of notice            Seller's address for purposes of notice
636* _____       _____
637* _____       _____
638* _____       _____

639 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
640 entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
641 Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
642 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
643 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
644 made by Seller or Listing Broker to Cooperating Brokers.

645* _____Chris Creegan - Alex M. Paris_____       _____Christine S Bowen_____
646 **Cooperating Sales Associate, if any**           **Listing Sales Associate**

647* _____Creegan Property Group_____              _____RE/MAX TOWN &amp; COUNTRY REALTY_____
648 **Cooperating Broker, if any**                    **Listing Broker**

Form
Simplicity

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate...-9cec-8...-...



## Comprehensive Rider to the
## Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between Trustee for Jose Villavicencio Ch.7 Case 19-52861 (SELLER)
and (BUYER)
concerning the Property described as 5449    HANSEL AVE    1
ORLANDO    FL    32809

**Buyer's Initials** _GH_    _GH_    **Seller's Initials** _MT_

### P. LEAD-BASED PAINT DISCLOSURE
### (Pre-1978 Housing)

Lead-Based Paint Warning Statement
"Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that
such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead
poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities,
reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to
pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on
lead-based paint hazards from risk assessments or inspection in the seller's possession and notify the buyer of any known lead-
based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

**Seller's Disclosure (INITIAL)**
_MT_    (a) Presence of lead-based paint or lead-based paint hazards (**CHECK ONE BELOW**):
☐ Known lead-based paint or lead-based paint hazards <u>are present</u> in the housing.
☒ Seller has <u>no knowledge</u> of lead-based paint or lead-based paint hazards in the housing.
_MT_    (b) Records and reports available to the Seller (**CHECK ONE BELOW**):
☐ Seller has provided the Buyer with all available records and reports pertaining to lead-based paint or
lead-based paint hazards in the housing. List documents: _____
_____
☒ Seller has no reports or records pertaining to lead-based paint or lead-based paint hazards in the
housing.

**Buyer's Acknowledgement (INITIAL)**
_GH_  _GH_    (c) Buyer has received copies of all information listed above.
_GH_  _GH_    (d) Buyer has received the pamphlet *Protect Your Family* from *Lead in Your Home.*
_GH_  _GH_    (e) Buyer has (**CHECK ONE BELOW**):
☐ Received a 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment
or inspection for the presence of lead-based paint or lead-based paint hazards; or
☒ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based
paint or lead-based paint hazards.

**Licensee's Acknowledgement (INITIAL)**
_CSB_    (f) Licensee has informed the Seller of the Seller's obligations under 42 U.S.C. 4852(d) and is aware of
Licensee's responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information
they have provided is true and accurate.

_Myron Terlecky_    07/12/2024    _Graziella Hediger_    07/12/2024
SELLER Trustee for Jose Villavicencio Ch.7 Case 19-52861    Date    BUYER _Andreas Hediger_    Date
    07/12/2024

_Christine S Bowen_    07/11/2024    _AH_    07/12/2024
SELLER    Date    BUYER    Date
Listing Licensee    Date    Selling Licensee    07/12/2024
Christine S Bowen    Date

**Any person or persons who knowingly violate the provisions of the Residential Lead-Based Paint Hazard Reduction Act of
1992 may be subject to civil and criminal penalties and potential triple damages in a private civil lawsuit.**
Page 1 of 1    P. LEAD-BASED PAINT DISCLOSURE
CR-6 Rev. 10/21 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Christine Bowen - RE/MAX TOWN & COUNTRY REALTY] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate... -9735-0...-9735-0...-9735-0...



# Comprehensive Rider to the
# Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between _Trustees for Jose Villavicencio Ch.7 Case 19-52861_____ (SELLER)
and_____ (BUYER)
concerning the Property described as _____5449    HANSEL AVE_____ 1_____
_____ORLANDO_____ FL____ 32809_____

**Buyer's Initials** _GH_____ _GH_____    **Seller's Initials** _MT_____ _____

## A. CONDOMINIUM RIDER

1. **CONDOMINIUM ASSOCIATION APPROVAL:**
   The Association's approval of Buyer (**CHECK ONE**): ☒ is ☐ is not required. If approval is required, this Contract is contingent upon Buyer being approved by the Association no later than _____ (if left blank, then 5) days prior to Closing. Within _____ (if left blank, then 5) days after Effective Date Seller shall initiate the approval process with the Association and Buyer shall apply for such approval. Buyer and Seller shall sign and deliver any documents required by the Association in order to complete the transfer of the Property and each shall use diligent effort to obtain such approval, including making personal appearances if required. If Buyer is not approved within the stated time period, this Contract shall terminate and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

2. **RIGHT OF FIRST REFUSAL:**
   (a) The Association (**CHECK ONE**): ☐ has ☒ does not have a right of first refusal ("Right"). If the Association has a Right, this Contract is contingent upon the Association, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the Association is not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration of Condominium ("Declaration", which reference includes all amendments thereto).
   (b) The members of the Association (**CHECK ONE**): ☐ have ☒ do not have a Right. If the members do have a Right, this Contract is contingent upon the members, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the members are not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration.
   (c) Buyer and Seller shall, within _____ (if left blank, then 5) days after Effective Date, sign and deliver any documents required as a condition precedent to the exercise of the Right, and shall use diligent effort to submit and process the matter with the Association and members, including personal appearances, if required.
   (d) If, within the stated time period, the Association, the members of the Association, or both, fail to provide the written confirmation or the Right has not otherwise expired, then this Contract shall terminate and the Deposit shall be refunded to the Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
   (e) If the Association or a member timely exercises its or their Right, this Contract shall terminate and the Deposit shall be refunded to Buyer (unless this Contract provides otherwise), thereby releasing Buyer and Seller from all further obligations under this Contract, and Seller shall pay to Broker the full commission at Closing in recognition that Broker procured the sale.

3. **FEES; ASSESSMENTS; PRORATIONS; LITIGATION:**
   (a) Condominium Association assessment(s) and Rents: Seller represents that the current Association assessment(s) installments is/are

   $ ____368.15____ payable (**CHECK ONE**): ☒ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and if more than one Association assessment
   $ _____ payable (**CHECK ONE**): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and the current rent on recreation areas, if any, is
   $ _____ payable (**CHECK ONE**): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

Page 1 of 3   A. CONDOMINIUM RIDER                                    **(SEE CONTINUATION)**
CR-6x Rev. 3/2023 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Christine Bowen - RE/MAX TOWN & COUNTRY REALTY] www.transactiondesk.com.



RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate/9735-08...

### A. CONDOMINIUM RIDER (CONTINUED)

All annual assessments levied by the Association and rent on recreational areas, if any, shall be made current by Seller at Closing, and Buyer shall reimburse Seller for prepayments.

(b) Fees: Seller shall, at Closing, pay all fines imposed against the Unit by the Condominium Association as of Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

*If Property is part of a Homeowners' Association, see Rider B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE for further information including additional assessments and fees.*

(c) Special Assessments and Prorations:

  (i) Seller represents that Seller is not aware of any special or other assessment that has been levied by the Association or that has been an item on the agenda, or reported in the minutes, of the Association within twelve (12) months prior to Effective Date, ("pending") except as follows:_____
_____
_____

  (ii) If special assessments levied or pending exist as of the Effective Date are disclosed above by Seller and may be paid in installments (**CHECK ONE**): ☐ Buyer ☐ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**

  (iii) If special assessments levied or pending exist as of the Effective Date and have not been disclosed above by Seller, then Seller shall pay such assessments in full at the time of Closing.

  (iv) If, after Effective Date, the Association imposes a special assessment for improvements, work or services, which was not pending as of the Effective Date, then Seller shall pay all amounts due before Closing Date and Buyer shall pay all amounts due after Closing Date.

  (v) A special assessment shall be deemed levied for purposes of this paragraph on the date when the assessment has been approved as required for enforcement pursuant to Florida law and the condominium documents listed in Paragraph 5.

  (vi) Association assets and liabilities, including Association reserve accounts, shall not be prorated.

(d) Litigation: Seller represents that Seller is not aware of pending or anticipated litigation affecting the Property or the common elements, if any, except as follows: _____
_____
_____

4. **SPRINKLER SYSTEM RETROFIT:**
   If, pursuant to Sections 718.112(2)(n), F.S., the Association has voted to forego retrofitting its fire sprinkler system or handrails and guardrails for the condominium units, then prior to Closing Seller shall furnish to Buyer the written notice of Association's vote to forego such retrofitting.

5. **NON-DEVELOPER DISCLOSURE:**
   **(CHECK ONE):**

   ☐ (a) THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS CONTRACT.

   ☑ (b) THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND

CR-6x  Rev. 3/2023 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

This software is licensed to [Christine Bowen - RE/MAX TOWN & COUNTRY REALTY] www.transactiondesk.com.    **TRANSACTIONS** TransactionDesk Edition

RealtyBackOffice document certificate: https://api.realtybackoffice.com/download_certificate...-9735-0...

LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

**6. BUYER'S REQUEST FOR DOCUMENTS:**
Buyer is entitled, at Seller's expense, to current copies of the condominium documents specified in Paragraph 5, above. Buyer (**CHECK ONE**): ☑ requests ☐ does not request a current copy of the documents specified in Paragraph 5, above. If this Contract does not close, Buyer shall immediately return the documents to Seller or reimburse Seller for the cost of the documents.

**7. BUYER'S RECEIPT OF DOCUMENTS:**
(**COMPLETE AND CHECK ONLY IF CORRECT**) ☐ Buyer received the documents described in Paragraph 5, above, on _____.

**8. COMMON ELEMENTS; PARKING:**
The Property includes the unit being purchased and an undivided interest in the common elements and appurtenant limited common elements of the condominium, as specified in the Declaration. Seller's right and interest in or to the use of the following parking space(s), garage, and other areas are included in the sale of the Property and shall be assigned to Buyer at Closing, subject to the Declaration:
Parking Space(s) # ___197___    Garage # _____    Other: _____

**9. INSPECTIONS AND REPAIRS:**
The rights and obligations arising under Paragraphs 11 and 12 of this Contract to maintain, repair, replace or treat are limited to Seller's individual condominium unit and unless Seller is otherwise responsible do not extend to common elements, limited common elements, or any other part of the condominium property.

**10. GOVERNANCE FORM; MILESTONE INSPECTION REPORT; STRUCTURAL INTEGRITY RESERVE STUDY:**
(a) GOVERNANCE FORM:  Pursuant to Chapter 718, F.S., Buyer is entitled to receive from Seller a copy of the governance form in the format provided by the Division of Florida Condominiums, Timeshares and Mobile Homes of the Department of Business and Professional Regulation, summarizing governance of condominium associations.

(b) MILESTONE INSPECTION REPORT SUMMARY:  Pursuant to Section 718.503(2)(a)5, F.S., Buyer who has entered into this Contract is entitled, at Seller's expense, to receive from Seller, before the sale of the Property, a copy of the inspector-prepared summary of the milestone inspection report, as described in Sections 553.899 and 718.301(4)(p), Florida Statutes, if (1) applicable and (2) the summary has been submitted to the Association.

(c) STRUCTURAL INTEGRITY RESERVE STUDY:  Pursuant to Section 718.503(2)(a)6, F.S., Buyer who has entered into this Contract is entitled, at Seller's expense, to receive from Seller, before the sale of the Property, a copy of the Association's most recent structural integrity reserve study or a statement that the Association has not completed a structural integrity reserve study.

This software is licensed to [Christine Bowen – RE/MAX TOWN & COUNTRY REALTY] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

## <u>NOTICE OF MOTION OF CHAPTER 7 TRUSTEE FOR AUTHORITY TO SELL REAL ESTATE LOCATED AT (1) 5465 HANSEL AVENUE, UNIT H-11 OF CAMELOT BY THE LAKE, ORLANDO, FLORIDA, AND (2) 5449 HANSEL AVENUE, UNIT M-17, OF CAMELOT BY THE LAKE, ORLANDO, FLORIDA, FREE AND CLEAR OF ALL CLAIMED LIENS, INTERESTS OR ENCUMBRANCES<br>AND CERTIFICATE OF SERVICE</u>

The Chapter 7 Trustee has filed papers with the court seeking the authority to sell property of the estate.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to grant the relief sought in the Motion, **then on or before twenty-one (21) days from the date set forth in the certificate of service for the Motion**, you or your attorney must file with the court a response explaining your position by mailing your response by first class U.S. Mail to Clerk, United States Bankruptcy Court, 170 North High Street, Columbus, Ohio 43215, OR your attorney must file a response using the court's ECF system.

**The Chapter 7 Trustee has filed a Motion to Reduce this 21 day period to 10 days. If the Court grants this Motion, you will receive Notice of the Date by which you need to file your response.**

The Court must **receive** your response on or before the date set forth above.

You must also send a copy of your response either by 1) the court's ECF System, or by 2) first class U.S. Mail to:

| | |
|---|---|
| United States Trustee | Myron N. Terlecky, Esq. |
| 170 North High Street, Suite 200 | Strip, Hoppers, Leithart, McGrath & Terlecky Co., LPA |
| Columbus, Ohio 43215 | 575 South Third Street |
| | Columbus, Ohio 43215 |

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing MOTION OF CHAPTER 7 TRUSTEE FOR AUTHORITY TO SELL REAL ESTATE LOCATED AT (1) 5465 HANSEL AVENUE, UNIT H-11 OF CAMELOT BY THE LAKE, ORLANDO, FLORIDA, AND (2) 5449 HANSEL AVENUE, UNIT M-17, OF CAMELOT BY THE LAKE, ORLANDO, FLORIDA, FREE AND CLEAR OF ALL CLAIMED LIENS, INTERESTS OR ENCUMBRANCES was served (i) electronically on the date of filing through the court's ECF system on all ECF participants registered in the case at the email addresses registered with the court, and (ii) by first class U.S. mail on July 18, 2024, addressed to those parties listed on the attached mailing matrix and addressed to the additional parties as set forth below:

Jose Villavicencio
669 South 22nd Street
Columbus, OH 43205

Christine Bowen
RE/MAX Town & Country Realty
1315 Tuskawilla Rd., Ste. 101
Winter Springs, FL 32708

Chris Creegan
Creegan Property Group
439 Lake Howell Rd.
Maitland, FL 32751
Realtor for Graziella Hediger and Andreas Hediger

The attached mailing matrix was provided by the Bankruptcy Court's CM/ECF Service. Service was made upon both preferred and non-preferred addresses (preferred addresses are marked with "(p)"). Service was not made upon entities with similar names at identical addresses. Though listed in the matrix, a copy of this document was not sent to the United Stated Bankruptcy Court, John W. Kennedy nor Myron N. Terlecky.

_/s/   Myron N Terlecky_____
Myron N. Terlecky (0018628)

8

Label Matrix for local noticing
0648-2
Case 2:19-bk-52861
Southern District of Ohio
Columbus
Tue Jul 16 14:10:31 EDT 2024

Rent Due LLC
c/o Maria Mariano Guthrie
Kegler, Brown, Hill & Ritter
65 E. State Street, Ste. 1800
Columbus, OH 43215-4294

AFFILIATED TAX CO LLC -17
US Bank/Affiliated Tax Co LLC
PO Box 645040
Cincinnati OH 45264-0303

(p)AMERICAN ELECTRIC POWER
ATTN JASON E REID
1 RIVERSIDE PLAZA 13TH FLOOR
COLUMBUS OH 43215-2373

Asst US Trustee (Col)
Office of the US Trustee
170 North High Street
Suite 200
Columbus, OH 43215-2417

(p)OHIO ATTORNEY GENERAL
COLLECTIONS ENFORCEMENT ATTN BANKRUPTCY MANAG
30 E BROAD ST
14TH FLOOR
COLUMBUS OH 43215-3414

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

Bank of America, N.A.
P O Box 982284
El Paso, TX 79998-2284

City of Columbus Attorney
90 W. Broad St. Room 200
Columbus, OH 43215-9013

(p)COLUMBIA GAS
290 W NATIONWIDE BLVD 5TH FL
BANKRUPTCY DEPARTMENT
COLUMBUS OH 43215-4157

Enhanced Recovery Corp
8014 Bayberry Rd
Jacksonville, FL 32256-7412

Franklin County Treasurer
373 S. High St. 17th Floor
Columbus, OH 43215-4591

Graf & McGovern LPA
604 E. Rich St.
Columbus, OH 43215-5341

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Law Office of Manbir Sandhu
1213 Prospect Ave. #300
Cleveland, OH 44115-1260

Mishkind Kulwicki Law Co
23240 Chagrin Blvd.
Ste 101 Commerce Park IV
Beachwood, OH 44122-5482

(p)NATIONSTAR MORTGAGE LLC
PO BOX 619096
DALLAS TX 75261-9096

Ohio Department of Taxation
Bankruptcy Division
P.O. Box 530
Columbus, OH 43216-0530

Shapero & Green LLC
25101 Chagrin Blvd. #220
Beachwood, OH 44122-5656

TLOA Acquisitions, LLC - Series 2
11 Talcott Notch Road
Farmington, CT 06032-1817

TLOA Servicing LLC
11 Talcott Notch Rd.
Farmington, CT 06032-1817

Tax Ease Ohio, LLC
14800 Landmark Blvd., Suite 400
Dallas, TX 75254-7598

US Attorney General
Main Justice Bldg, Room 5111
10th & Constitutional Avenue NW
Washington, DC 20530-0001

US Bank as Customer
c/o Liege Tax Liens LLC 18
P.O. Box 645040
Cincinnati, OH 45264-0303

US District Attorney
303 Marconi Blvd
Columbus, OH 43215-2839

Verna Coward
16250 Flint Ridge Rd. South
Newark, OH 43056-9457

Verna Coward
Verna & Craig Coward, Admin.
25101 Chagrin Blvd. #220
Beachwood, Oh 44122-5656

Verna Coward
Verna & Craig Coward, Admins
Estate of Frederick Coward
25101 Chagrin Blvd. #220
Beachwood, OH 44122-5656

Verna R. Coward
Adm Est.Frederick Coward, Jr.
25101 Chagrin Blvd #220
Beachwood, Oh 44122-5656

Weltman Weinberg & Reis
3705 Marlane Dr.
Grove City, OH 43123-8895

Westgate Blue Tree Owners Association,
C/O Greenspoon Marder LLP
201 E. Pine Street, Suite 500
Orlando Florida 32801-2718

Christina Bowen
RE/MAX Town & Country
1315 Tuskawilla Rd., Suite 101
Winter Springs, FL 32708-5059

Jose R. Villavicencio
PO Box 32185
Columbus, OH 43232-0185


Mark Jay Bamberger
The Mark Bamberger Co., LLC
PO Box 189
Spring Valley, OH 45370-0189

Myron N Terlecky
575 S Third Street
Columbus, OH 43215-5755

Verna Coward
c/o Brian Green
25101 Chagrin Blvd. #220
Beachwood, OH 44122-5656


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


American Electric Power
Attn Bankruptcy
1 AEP Way
Hurricane, WV 25526-1231

Attorney General - Rev Rec
ATTN: Bankruptcy Staff
150 E. Gay Street, 21st Floor
Columbus, OH 43215

Bank of America
Billing Inquiries
PO Box 982236
El Paso, TX 79998-2236


Columbia Gas
290 W. Nationwide Blvd. 5th Flr
Bankruptcy Department
Columbus, OH 43215-4157

Nationstar Mortgage LLC
Attn Bankruptcy Department
PO Box 619096
Dallas, TX 75261-9741


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)TLOA Acquisitions, LLC

(u)Tax Ease Ohio, LLC

End of Label Matrix
Mailable recipients    35
Bypassed recipients     2
Total                  37